No. 88-242

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

ASHLAND OIL, INC., d/b/a SUPERAMERICA,

        Petitioner and Appellant,

   -vs-

DEPARTMENT OF LABOR AND INDUSTRY AND
LABOR APPEALS BOARD, Agencies of the
State of Montana, and CHARLES HYATT,

        Respondents and Respondents.

---

APPEAL FROM: District Court of the First Judicial District,
              In and for the County of Lewis & Clark,
              The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Francis X. Clinch; Jardine, Stephenson, Blewett and
        Weaver, Great Falls, Montana

    For Respondent:

        Ann Smoyer; Smoyer, Vaznelis & Berry, Helena, Montana
        Karl Nagel, Dept. of Labor & Industry, Helena, Montana

Submitted on Briefs: Sept. 9, 1988

Decided: December 5, 1988

FILED

'88 DEC 5 PM 3 14

CLERK OF THE SUPREME COURT
MONTANA

Filed:

_____
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Appellant Ashland Oil, Inc. (Ashland) appeals a decision from the First Judicial District, Lewis and Clark County, awarding unemployment benefits to the respondent on the basis that the respondent's actions did not constitute misconduct within the meaning of the law. We reverse.

Charles Hyatt was employed by Ashland as an assistant manager at its SuperAmerica store in Helena, Montana, from March 1, 1986 to February 12, 1987. One of Hyatt's duties as assistant manager included the recording of non-sufficient fund checks (NSF) returned by banks. On two separate occasions in or around June of 1986, Hyatt notified the store manager when other employees had checks returned.

In August of 1986, Hyatt ordered some sporting goods equipment for his personal use through one of the store's suppliers. This was an accepted practice, and employees who took advantage of the practice were expected to pay for the merchandise when it arrived. However, Hyatt did not have sufficient funds to pay for the equipment he ordered, so the amount was billed to the store. This amount went unpaid until an internal audit in December, 1986 revealed the fact Hyatt still had not paid for the goods. The store required Hyatt to pay for the goods and gave him a written warning.

In November of 1986, Hyatt's bank began returning his personal checks because of insufficient funds in his account. Between November 13, 1986 and the end of December, 1986, Hyatt issued four checks to Ashland. These NSF checks were written to pay for gas and merchandise and to obtain cash. Hyatt recorded the amounts of these checks on the NSF ledger he maintained for his employer. However, the ledger did not list the name of the person issuing the check. Hyatt was

notified by both his bank and Check-Rite, Ashland's check collection agent, of these returned checks. These checks amounting to $220 were finally paid in late December, 1986.

From December 28, 1986 to February 5, 1987, Hyatt wrote seven more NSF checks to his employer, amounting to a total of approximately $119. Both the bank and Check-Rite again notified Hyatt of each returned NSF check. Check-Rite set up a payment schedule to help Hyatt repay the amounts, but he failed to meet this schedule. Each Friday he promised to come in the next week and pay the amount owing. Finally on February 12, 1987, Check-Rite notified Hyatt's supervisors of their problem with him. When Hyatt came in to pick up his check that day, he was confronted with the information. He informed his supervisors that he was on his way to pay for the checks. When he returned from Check-Rite, he met with his supervisors. At the conclusion of that meeting, Hyatt's employment was terminated.

Hyatt filed for unemployment benefits, but his employer objected to the payment of said benefits. Following a hearing on April 6, 1987, the Appeals Referee found Hyatt's conduct did not constitute misconduct within the meaning of the law and awarded benefits. The Board of Labor Appeals and the District Court both affirmed the findings.

Ashland raises the following issues for our review:

1. Did the District Court err in determining whether Hyatt committed misconduct on the basis of his employer's conduct?

2. Did the District Court err in holding that Hyatt's issuance of NSF checks to his employer did not constitute misconduct, even though his conduct violated a Montana criminal statute?

3

3. Did the District Court err in holding that Hyatt's admitted violation of the policy of his employer did not constitute misconduct?

4. Did the District Court err in holding that Hyatt did not breach his fiduciary duty by issuing NSF checks to his employer?

Section 39-51-102, MCA, contains the declaration of state public policy with regard to unemployment benefits. In subsection (3) of the statute, the legislature provides that unemployment benefits are "[t]o be used for the benefit of persons unemployed through no fault of their own." Section 39-51-102(3), MCA. The code further provides employees may be disqualified for unemployment benefits when their discharge is due to "misconduct connected with the individual's work or affecting the individual's employment. . . " Section 39-51-2303(1), MCA. Misconduct is defined in § 24.11.418, A.R.M. as:

> Conduct on the part of the employee evincing such willful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer. Mere inefficiency, unsatisfactory conduct, failure in good performance as a result of inability or incapacity, inadvertences or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute. (Gaunce v. Board of Labor Appeals, 164 Mont. 442, 542 P.2d 1108, (1974), Boynton Cab Co. v. Neubeck et

4

al., 237 Wis. 249, 296 N.W. Reporter 636, (1941)).

When reviewing a Board of Labor Appeals' decision awarding or denying unemployment benefits, the courts are governed by § 39-51-2410(5), MCA.

> [T]he findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law.

In the case of Jordan v. Craighead (1943), 114 Mont. 337, 136 P.2d 526, this Court found that the evidence necessary to sustain the Board's findings as conclusive must be more than "a mere scintilla." There must be "[s]ubstantial evidence, -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Jordan, 136 P.2d at 528. Further, while the court may not consider the preponderance of the evidence the question of whether there is substantial evidence to sustain the findings is one of law. Jordan, 136 P.2d at 528.

Ashland contends in its first issue that the District Court erroneously examined the employer's conduct in discharging Hyatt to determine whether or not Hyatt was eligible for unemployment benefits. The District Court found Ashland's disciplinary policy was unclear and that its normal procedure of giving an employee two written warnings was not followed. This Court has previously upheld the Board of Labor Appeals' examination of conduct, policies and motives of an employer. See Gaunce v. Board of Labor Appeals (1974), 164 Mont. 445, 524 P.2d 1108; Connolly v. Montana Board of Labor Appeals (Mont. 1987), 734 P.2d 1211, 44 St.Rep. 587. A reviewing body should remain primarily focused upon whether or not the employee's actions constitute misconduct, keeping in mind that when the employer allows or condones other

instances of similar conduct, the activity may lose the stigma of misconduct under those circumstances.

The record in this case shows Ashland's policy on bad checks was to allow an employee to pick up the check and avoid the Check-Rite fee on the first occurrence. On the second occurrence an employee had to "deal" with Check-Rite. While it is unclear at what point or number of bad checks an employee would be discharged, it is clear the employer discouraged this conduct and expected the employee to reimburse the employer for the NSF check when the employee became aware of it. Yet, Hyatt issued eleven NSF checks to his employer over a three month period and allowed them to remain unpaid for up to six weeks. Hyatt's actions clearly went beyond the conduct an employer may reasonably expect from its employee. See § 24.11.418(2), A.R.M. We do not find any action in the record condoning or allowing Ashland's employees to pass repeated bad checks without paying for them promptly.

The second issue raised on appeal is whether an employee's violation of a criminal statute will constitute misconduct as a matter of law, thus prohibiting unemployment benefits.

The Legislature of this state has determined that the issuing of bad checks is a criminal offense. Section 45-6-316, MCA. In making this determination the Legislature requires that the person knowingly issued the bad check. However, realizing the inherent difficulty involved in determining whether or not a person "knowingly" issued the check, subsection (2) states that the "failure to make good the check or other order within 5 days after written notice of nonpayment has been received by the issuer is prima facie evidence that he knew that it would not be paid by the depository." Section 45-6-316(2), MCA.

Hyatt admitted at the Appeals hearing that he knew he was incapable of maintaining a checking account without writing NSF checks. He further stated, however, that he did not know when he wrote the checks at issue that his account contained insufficient funds. Because of this claimed lack of knowledge, the Appeals Referee, Board of Labor Appeals and the District Court, all erroneously found Hyatt should not be denied unemployment benefits.

Section 24.11.430, A.R.M. provides that an employee's violation of law while acting outside of the scope of his employment may or may not disqualify a claimant for benefits. To disqualify an individual, the matter must "impact or affect the ability of the employee to perform his job duties or substantially injure the employer's ability to do business . . . "

Here, Hyatt issued eleven NSF checks, amounting to over $300 during a three-month period, to his employer's place of business in violation of § 45-6-316, MCA. Further, when Hyatt was notified to make payment by both the bank and Check-Rite, he took up to six weeks to pay the amounts owing on the checks.

It is clear from the evidence presented that Hyatt's ability to perform his job as assistant manager was affected. Prior to when he began issuing the checks he had notified his employer when other employees had checks returned. Hyatt knew without being told by his supervisors that they should be notified when an employee abused their privilege of writing checks at the store. However, when he had checks returned he neither notified his supervisors of the problem nor corrected the problem in a timely manner. In his position he was solely responsible for receiving the notices from Check-Rite and "logging" the amounts on a ledger which was submitted to the area manager each month.

7

The Administrative Rules of Montana in §§ 24.11.418 through .431 identify and define examples of misconduct which warrant denial of unemployment benefits. Example "C" in § 24.11.420, A.R.M., on dishonesty provides an example of a violation of law constituting misconduct sufficient to deny benefits. In that example, a motel maid, charged with several counts of criminal theft of a motel guest's property, admitted taking the property and offered to return it. Her employer dismissed her. The rules state this act of misconduct was sufficient to deny the employee benefits.

Here we also have an employee committing repeated acts at the employer's place of business, directly adverse to the employer's interests. The employee admits having written the checks, having received notice that the bank did not honor the checks and that despite repeated demands he failed to pay for the checks for up to six weeks. These repeated violations of law, directly adverse to the employer's interests, constitute misconduct as a matter of law sufficient to deny the discharged employee unemployment benefits.

Appellant's third issue concerns whether the District Court erred in holding Hyatt's admitted conduct in violating his employer's policy did not constitute misconduct. The District Court found Ashland would allow an employee two NSF checks, but found the record was unclear on "whether a third offense would result in the employee's discharge." The court stated,

> [s]ince Ashland had been so casual in the past about permitting employees to bounce checks, it is difficult to characterize Hyatt's behavior as a "willful or wanton act which demonstrates a disregard of the employer's interest."

8

We disagree.

In his discharge statement signed February 18, 1987, Hyatt acknowledged he had received one written warning relating to the reason for his discharge, that he was discharged for violation of a company rule or policy, that he actually violated that rule or policy, that he was aware of the rule or policy when he violated it, and that the rule or policy was contained in a handbook. The handbook was not made a part of the evidence before the Board, but other evidence showing Hyatt's awareness of the policy was introduced.

In his duties as assistant manager, Hyatt had notified the store manager when other employees had checks returned NSF. He admitted that when he had notified the store manager of other employees' NSF checks, he was told the company did not want their employees to make a habit of this type of behavior. Also, when asked at the hearing before the Appeals Referee what he thought would happen if his NSF checks were reported to his supervisors, Hyatt replied "[they] probably would have thrown me out."

The most significant evidence regarding Hyatt's willful disregard for his employer's policy was the fact he allowed the checks to go unpaid for such long periods on two separate occasions. When an employee floats a large number of checks on his employer for long periods of time he clearly exhibits a willful disregard of the employer's interest. Such actions show a willful disregard for the "standards of behavior which the employer has the right to expect of his employee . . ." and warrant a denial of unemployment benefits. § 24.11.418(2), A.R.M.

Appellant's fourth issue is whether the District Court erred in finding Hyatt did not breach his fiduciary duty to his employer by issuing the bad checks at his employer's

9

place of business. Having previously found Hyatt should be denied unemployment benefits, we find we need not address this issue.

We find Ashland did not allow or condone conduct of the extent Hyatt exhibited; Hyatt's conduct was misconduct as a matter of law; and by Hyatt's admitted awareness and violation of his employer's policies and his willful disregard for his employer's interests, Hyatt can only be found to have caused his own termination and unemployment benefits should have been denied.

Reversed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

10

Mr. Justice William E. Hunt, Sr., dissenting.

I dissent. The majority has set forth their dislike for the practice of bad check writing. This dislike will be applauded by reasonable people the world over and I join in that applause. But I cannot agree with the majority's apparent holding that all those who write checks without sufficient funds in the bank are unable to perform their jobs as "a matter of law."

Even Ashland Oil, the employer, did not go that far. Its area manager said, "I could have accepted one or two returned checks. There would have been no problem. I've seen employees return checks before. It's excusable. It's human error." The employer, in fact, gave a letter of reference to the employee, and while it was less than glowing as to his management skill--"until he gains some additional experience and maturity"--the letter of recommendation did point out that Hyatt was a "very good worker . . . whose determination, hard work and initiative, will be of value to him and his future employer."

The hearing examiner who heard the case did not find that Hyatt was discharged for misconduct within the meaning of the Montana Unemployment Insurance law. The Board of Labor Appeals upheld that finding. The District Court reviewed the file and after a full and complete discussion of the law and facts concluded, in the language of the rule, that "[t]he statutory term misconduct shall not be literally applied so as to operate as a forfeiture except in clear instances of willful or wanton misconduct by the claimant which affects the employer's interest." § 24.11.418(6), A.R.M. The District Court upheld the Board of Appeals and this Court should do the same. Writing a check without knowledge of sufficient funds is not a wholesome practice. It does not, however, constitute misconduct as a matter of law within the meaning of the Montana Unemployment Insurance act.

_____
Justice

- 11 -