JORDAN, RESPONDENT, *v.* CRAIGHEAD ET AL., APPELLANTS.

[No. 8370.]

(Submitted February 1, 1943. Decided April 20, 1943.)

[136 Pac. (2d) 526.]

338

Messrs. *Toomey, McFarland & Hall, Mr. E. G. Toomey* and *Mr. Everett E. Lofgren,* for Appellants, submitted a brief; *Mr. Toomey* argued the cause orally.

*Mr. John E. Erickson, Mr. Sam D. Goza, Jr.,* and *Mr. Ralph J. Anderson,* of Counsel, for Respondent, submitted a brief; *Mr. Erickson* and *Mr. Anderson* argued the cause orally.

*Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher,* amici curiae, submitted a brief; *Mr. Rankin* argued the cause orally.

MR. CHIEF JUSTICE JOHNSON, delivered the opinion of the court.

Defendants, constituting the Unemployment Compensation Commission of the State of Montana, have appealed from a district court decree ordering them to set aside the Commission's Decision No. 15 and to pay plaintiff unemployment benefits.

The complaint recited that plaintiff had for more than three years prior to May 28, 1941, been regularly employed by the Stoltze Land and Lumber Company in Flathead County; that he then became unemployed by reason of a stoppage of work at the employer's plant and filed his claim with the Commission for unemployment benefits on May 31, 1941; that the Commission's Claims and Benefit Deputy on June 23rd determined plaintiff ineligible because the work stoppage resulted from a labor dispute; that the Appeal Tribunal of the Com-

mission, after a hearing at Kalispell on July 17, 1941, made its "Appeal Tribunal Decision No. 109" sustaining the decision of the Claims and Benefit Deputy; that on July 31st plaintiff appealed from the latter decision, a hearing was held on the appeal, and thereafter on September 15, 1941, the Unemployment Compensation Commission rendered "Commission Decision No. 15 sustaining Appeal Tribunal Decision No. 109."

The complaint further alleges that "the testimony taken at all hearings before the Commission on the claim of benefit shows definitely and conclusively" that the work stoppage was caused by a labor dispute and "was due to the fact that the employer neglected and refused to bargain collectively in good faith with the recognized representatives of the employees or to discuss other reasonable and just requests of the employees with reference to wages and working conditions," and that the Commission's. decision is not sustained nor justified by the evidence and is contrary to the Montana Unemployment Act; that the testimony before the Commission shows affirmatively that plaintiff is entitled to the benefits applied for and that the testimony does not show or tend to show that the plaintiff was interested directly or indirectly in the said labor dispute or that he belonged to a grade or class of workers who were interested in said dispute within the meaning of the Act or that he is ineligible for its benefits.

Issues were joined in district court by the answer, and the trial was had before the court without a jury upon the complaint, answer and "a certified copy of all documents and papers and a transcript of all testimony taken in the matter before the Unemployment Compensation Commission of Montana, together with its findings of fact and decision therein, and all other papers and records before the said Commission * * *." The district court's decree was as above stated.

A copy of "Commission Decision No. 15 sustaining Appeal Tribunal Decision No. 109" is annexed to the complaint as an exhibit. After recital of the hearing and appeal proceedings, it reads as follows:

"Section 5(d) of the Montana Unemployment Compensation Law, reads as follows:

[An individual shall be disqualified for benefits—]

" '(d) For any week with respect to which the Commission finds that his total unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, provided that this Subsection shall not apply if it is shown to the satisfaction of the Commission that—

" '(1) He is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and

" '(2) He does not belong to a grade or class of workers of which immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute;

" 'Provided, * * * further, that if the Commission, upon investigation, shall find that such labor dispute is caused by the failure or refusal of any employer to conform to the provisions of any law of the State of Montana or of the United States pertaining to collective bargaining, hours, wages or other conditions of work, such labor dispute shall not render the workers ineligible for benefits'.

"There can be no question but what the work stopped at the plant or enterprise of the employer on May 28, 1941, at 2 o'clock P. M., nor can there be any question but what the stoppage of work was caused by a 'labor dispute' since it is very evident that there was a dispute between the employer and his employees over working conditions, wages, etc. The claimant was a member of the Union, a member of the negotiating committee, and directly interested in the labor dispute, and not of a grade or class of workers who were not interested in the labor dispute. The Appeal Tribunal did not find that there was material testimony produced which showed violations of State or National laws. A thorough reading of the transcript con-

vinces us that the stoppage of work at the F. H. Stoltze Land and Lumber Company plant on May 28, 1941, at 2 o'clock P. M. was not *caused* by the violation of any law.

"Decision

"The decision of the Appeal Tribunal No. 109, dated July 17, 1941, is hereby sustained and approved, and the law will not permit this Commission to pay benefits to this claimant.

"Barclay Craighead,

"Chairman."

Section 6 of Chapter 137, Laws of 1937, provides for the ■ appellate procedure within the Commission which was followed by plaintiff, and permits a judicial review after the applicant has exhausted all those remedies before the Commission. Subdivision (i) provides in part: "In any judicial proceeding under this section, the findings of the Commission as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law."

No fraud is charged and the question before the district court and before this court is whether the findings of the Commission were "supported by evidence." Both parties agree that by "evidence" is meant not a mere scintilla but substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (*Consolidated Edison Co. v. National Labor Relations Board,* 305 U. S. 197, 59 S. Ct. 206, 217, 83 L. Ed. 126), "enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." (*National Labor Relations Board v. Columbia Enameling & Stamping Co., Inc.,* 306 U. S. 292, 59 S. Ct. 501, 505, 83 L. Ed. 660).

But that means only that the court must find that the evidence ■ sustaining the findings is substantial and not that in its opinion the evidence *contra* is less substantial or does not preponderate against it. By the very words of the statute the courts are precluded from considering the preponderance of

evidence; for when the evidence is conflicting and is substantial on both sides, the Commission's findings of fact either way are obviously "supported by evidence" and are therefore conclusive upon the courts. As suggested in the last case cited above, the Commission's findings of fact, like a jury's verdict, need not necessarily be supported by what the court considers a preponderance of the evidence, for that would be to substitute the court's view of the evidence for that of the Commission or of the jury.

It will be noted further that the Act expressly limits the ▆ jurisdiction of the courts to questions of law. Whether there is substantial evidence to sustain the Commission's decision is a question of law, but it is not a question of law whether the Commission decided the question of fact according to the preponderance of the evidence. Thus the sole question for the court with relation to the evidence is one of law, namely, whether the findings are supported by substantial evidence, regardless of whether there is also substantial evidence or even a preponderance of evidence to the contrary.

The questions of fact to be determined by the Commission ▆ under the statute quoted above as "Section 5(d) of the Montana Unemployment Compensation Law" (Section 5(d), Chapter 137, Laws of 1937, as amended by Sec. 3, Chapter 164, Laws of 1941) related to the cause of the labor dispute. The meaning of the statute is obvious—that the applicant is ordinarily ineligible to the benefits of the Act if his unemployment is due to a labor dispute in which he participates or is interested; but that even in such event he is not ineligible if the Commission finds that the dispute was caused by the employer's failure or refusal "to conform to the provisions of any law of the State of Montana or of the United States pertaining to collective bargaining, hours, wages or other conditions of work."

There can be no possible doubt that there is substantial evidence to sustain the findings that the work stoppage was caused by a labor dispute between the employer and employees, and that the claimant was a member of the Union and of its negoti-

ating committee and participated and was directly interested in the dispute, for the evidence to that effect is not only substantial but uncontradicted.

The final question, then, is whether there is sufficient substantial evidence to sustain the Commission's finding that the labor dispute was not caused by the employer's violation of a state or federal law. Plaintiff contends that there is evidence showing that the labor dispute was caused by the employer's violation of subdivision 5 of section 8 of the National Labor Relations Act, (Sec. 158(5) of Title 29 U. S. C. 1940 Ed.), which provides: "It shall be an unfair labor practice for an employer—* * * (5) To refuse to bargain collectively with the representatives of his employees * * *." The contention is that the employer violated that provision by failing to bargain in good faith, and that such violation caused the labor dispute.

The issue being one of fact as to the cause of the dispute, we are limited to a consideration of the question whether there is substantial evidence sustaining the finding that the cause was not the employer's violation of law.

The evidence showed that a strike was authorized by vote of the Union members on April 25, 1941; that the demands were for a seven and one-half cents an hour increase in pay, the "union shop clause," and other modifications of the union contract. No written notice was given to the employer until May 28, 1941, when a letter signed by the president and recording secretary of the Union, the body of which was as follows, was delivered to the employer's manager:

"Negotiations having broken down between yourselves and our negotiating committee, we deem it necessary to the best interests of the Union and the Union members that a strike be called at your Half Moon plant, effective at 2:00 p. m. today.

"For your consideration in settling this strike we would list the following as Union demand:—

"Union Shop Clause added to existing agreement.

"Weeks vacation with pay for all employees on the payroll for a period of one year or longer.

"7½ cents per hour increase in pay for all employees.

"Wage adjustments in the middle brackets.

"Signed agreement that all logs, lumber and lumber products will come from union operation wherever possible.

"Closer observance of existing agreements, especially the seniority clause pertaining to the rights of older men.

"Please feel free to call upon our committee at any time for further negotiations.

"It is not the intention of this strike to interfere with any orders that go directly into the defense program.

"It likewise is not the intent of the Union to interfere with the firemen, watchmen or others necessary to the proper maintenance of the plant during this shutdown.

"Signed, sealed for Lumber and Sawmill Workers Local Union No. 2797, by its officers."

The letter and the testimony concerning the strike vote taken over a month before certainly constitute substantial evidence that the cause of the labor dispute was a desire to obtain certain modifications of the then existing union agreement, the principal issues, according to the other evidence, being the pay increase and the union shop clause.

Plaintiff argues that certain other evidence would have supported findings that the employer violated the federal provisions in certain respects, some of them after the strike had actually been called, and some of them so long before the labor dispute arose as to have no apparent causal connection with it. Several of plaintiff's witnesses testified that the strike was eventually settled by the grant of a five-cents an hour wage increase and a "part, or modified, union shop" clause; and that in their opinion if such offer had been made before the strike was actually called, there would have been no strike. The argument is obscure, but seems to be that if the employer were bargaining in good faith before the strike was actually called, he would have made the same offer which finally settled it; that since, in the opinion of plaintiff and his witnesses, with no contrary opinion evidence, the offer would then have been

accepted without a strike, there was uncontradicted evidence warranting a finding by the Commission that the work stoppage, and also the labor dispute out of which it arose, was caused by the employer's violation of law. It is not necessary to analyze those various assumptions to see whether they are warranted by the law and the facts. Assuming, without deciding, that the evidence would have supported a finding that the employer had violated the federal law, a finding that his violations had caused the breakdown of negotiations without his first making an offer on the basis of which the strike was finally settled, and a finding that the violations therefore caused the work stoppage and also the labor dispute, which arose over a month earlier, the net result of all those assumptions would be a conclusion, not that the Commission's actual finding as to the cause of the dispute was not sustained by substantial evidence, but that there was also evidence which would have sustained a different finding as to the cause. In other words, granting all plaintiff's arguments, the most we can possibly say is that there was evidence before the Commission tending to show two inconsistent causes of the dispute, one of which clearly involved no law violation by the employer. In the presence of such conflicting evidence as to the cause of the dispute, the Commission's actual finding of fact would still be supported by substantial evidence.

Since the statute provides that the Commission's findings ▮ so supported are conclusive upon the courts, it is beyond our jurisdiction to consider whether there is also evidence upon which the Commission could in our opinion have reached a contrary result, or whether on the preponderance of the evidence we think that it should have done so. For the same reason it is clear that the trial court erred in presuming to set them aside and to overrule the Commission's order based thereon.

Other contentions have been made by the parties, the consideration of which is unnecessary. The points above considered are the principal ones upon which all the litigants apparently ▮ desired to submit the controversy. However, during the

argument it was called to the court's attention that the plaintiff's claim covered the first three days of his unemployment, whereas section 4 of Chapter 137, Laws of 1937, as amended by section 2 of Chapter 164, Laws of 1941, provides for a waiting period of two weeks (with exceptions not here material) before the applicant shall be eligible to receive benefits under the Act in any event. Since the Commission as well as the court is limited by the statute, it is apparent that the Commission could not properly have allowed the claim under the facts of this case, and that in a review of such improper allowance, the courts could not have sustained it as a matter of law.

It is true that in its decree the district court assumed to control the Commission with regard to the entire period of the strike, and to direct it to award plaintiff compensation both for the period claimed and for the balance of the unemployment. But the only jurisdiction of the courts under the statute is to review the Commission's orders, the only order before the courts on this appeal is that denying plaintiff compensation for the first three days of unemployment, and neither the trial court nor this court can go beyond a review of that order.

The decree of the district court is reversed, and the order of the Commission affirmed.

ASSOCIATE JUSTICES ERICKSON, ANDERSON, MORRIS and ADAIR concur.

Rehearing denied May 11, 1943.