ST. REGIS PAPER COMPANY, FOREST PRODUCTS DIVISION, Plaintiff and Appellant, *v.* UNEMPLOYMENT COMPENSATION COMMISSION of Montana, and CLARENCE W. MOLES, Defendants and Respondents.

No. 11914.
Submitted June 15, 1971.
Decided July 29, 1971.
487 P.2d 524.

Chadwick H. Smith argued, Helena, Robert N. Helding argued, Missoula, for plaintiff and appellant.

John Bell argued, Moody L. Brickett appeared, Helena, for defendants and respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by the plaintiff, St. Regis Paper Company, from an order and judgment in favor of defendant, Unemployment Compensation Commission of Montana, entered in the district court of Lincoln County, which sustained an Unemployment Compensation Commission decision that one 'Clarence W. Moles was an employee of St. Regis Paper Company insofar as the unemployment compensation law of Montana is concerned. Hereinafter plaintiff will be referred to as St. Regis, and defendant as the Commission.

The question raised by this appeal is whether or not there is substantial evidence to support the decision that Moles was an employee rather than an independent contractor.

The facts are simple and uncontested. Moles is the owner of a logging truck valued at approximately $35,000 and licensed in his own name. He provides his own insurance on the truck and pays his own expenses of operation. He entered into a written contract to haul logs for St. Regis as an independent contractor on January 3, 1968, for that calendar year, agreeing to be paid according to the weight of the logs hauled. No withholding deductions were ever taken from his contract payments for taxes, social security, or other assessments as is required for employees. Under the contract, Moles was required to provide his own industrial accident coverage. Moles was not required to join any labor union at St. Regis.

Under the contract, Moles agreed to haul logs from logging areas operated by St. Regis to the company's log ponds located in the Libby, Montana, area. He determined the load he wanted on his truck, selected his route to the St. Regis log ponds, missed work any day he chose, and was free to hire any relief driver of his choice to drive his truck as long as he carried industrial accident insurance upon such relief driver. He could refuse to haul any load he did not want to take, and could haul for any other logging company during the contract term to obtain extra work. Moles admitted he was his own boss in the hauling operation and, although St. Regis

informed him of the hours they would load and unload his truck for safety and convenient scheduling, he came and went as he desired, being paid solely on a volume basis. He maintained his own truck and paid for all repairs.

The Commission, in its Decision No. 936, dated July 21, 1969, held that Moles' service for St. Regis was employment under the Montana Unemployment Compensation law and that St. Regis was required to pay unemployment compensation taxes upon such employment. St. Regis appealed to the district court which sustained the Commission's decision.

Our statute, section 87-148(j) (5), R.C..M.1947, provides:

"(5)   Services performed by an individual for wages shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that:

"(A)   Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract and in fact; and

"(B)   Such service is either outside the usual course of the business for which such service is performed, or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and

"(C)   Such individual is customarily engaged in an independently established trade, occupation, profession or business."

The above cited so-called "ABC Test" is the statute to determine whether an employer-employee relationship exists for unemployment tax purposes. The statute provides that all three of the stated conditions must exist, or services performed will be deemed to be employment. The statute must be reasonably applied.

The problem was recognized by the Georgia Court of Appeals in National Trailer Convoy, Inc. v. Undercofler, 109 Ga.App. 703, 137 S.E.2d 328, 330. Georgia has an "ABC Test" identical to that in Montana. In that case the company engaged operators, who owned their own vehicles, by lease agreements to haul trailer houses to all points in the United States. These

operators hired their own assistants, paid the expenses of operation and maintenance of their vehicles, and were free to contract business with other companies or reject hauls assigned to them without a penalty. These operators were held to be independent businessmen and their income constituted profit, not wages for personal services. The Georgia Court recognized that the operator-drivers operated under a dispatch system similar to the system used by St. Regis in the case at bar:

"It was alleged in the affidavit of illegality that the individuals who enter into said lease agreements operate on a dispatch system and, when they are ready to tender their services and equipment, they are put on a dispatch board and dispatched in rotation in the order in which they appear on said board; and that, if they are offered a move from a designated point of origin to a designated point of destination, they may accept this move and proceed with it and, if they elect not to accept this move, they are placed at the bottom of the dispatch board to take their turn in the next order as it comes about. It was further alleged that the operators select their own routes over which they would move and that no time schedules or routes are prescribed by the company; that the operators are not guaranteed any specific numbers of moves or any period of employment and may at their option haul for other concerns or hold an independent certificate from the Public Service Commission and haul directly for their own account without any lease or contractual agreement; and that an operator's lease contract is not canceled because of his refusal of any particular haul tendered to him."

The Georgia Court then reviewed the "ABC Test" and stated:

"In determining whether an individual comes within the scope of the Employment Security Law under the above provisions, it is first necessary to establish that the individual in question performs services for wages, or the equivalent of the same, and this major premise must be established before the

exceptions enumerated in Code Ann. § 54-657(h) (6) of the law become material. * * * It is not the purpose of the 'A, B, C' tests to widen the scope of the term 'employment' as used in the statute so as to include therein persons not otherwise included, but their function is to exclude from the definition of the term 'employment' persons who might, except for the application of these tests, be included therein.

"* * *

" 'One whose income is determined by the profit or loss which he derives from his individual business cannot be said to be rendering "services for wages", even though he is contributing his personal services to the enterprise.' "

The Georgia Court ruled that because of the obvious independent contractor relationship existing between the parties, there were no "wages" involved and therefore, the "ABC Test" did not apply.

While the Commission argues that the fact situation here is quite different and that the above cited case should not be authority for Montana, we are of the opinion that the reasoning of the case is sound. We feel that whether a person performing services is an employer or an independent contractor is the question before us, and statutes used as guides in making such determination must not be distorted to allow persons who are truly independent in their operation to be held employees merely for tax purposes and resulting benefits derived from an employer-employee relationship.

In Kimball v. Ind. Acc. Bd., 138 Mont. 445, 448, 357 P.2d 688, 690, a case involving the matter of independent contractors in Montana, this Court quoted from Shope v. City of Billings, 85. Mont. 302, 278 P. 826, as follows:

" 'An independent contractor is one who renders service in the course of an occupation, and represents the will of his employer only as the result of his work, and not as to the means whereby it is accomplished, and is usually paid for the job.' And see Neyman v. Pincus, 82 Mont. 467, 267 P. 805.

"* * *

" 'The vital test in determining whether a person employed to do a certain piece of work is a contractor or a mere servant, is the control over the work which is reserved by the employer. Stated as a general proposition, if the contractor is under the control of the employer he is a servant; if not under such control, he is an independent contractor.

"* * *

" 'As to control, it is necessarily implied in every contract that the employer may insist that the contract shall be performed according to its specifications.' "

The relationship between St. Regis and Moles was created by written contract and in paragraph 8 thereof the parties stated their intention to establish an independent contractor relationship. That paragraph reads:

"8. INDEPENDENT CONTRACTOR RELATIONSHIP: It is agreed and understood that the parties hereto stand in the relationship to each other of independent contractors, and that the Contractor is contracting independently of the Company, and that the parties in no way stand in the relationship of master and servant, principal and agent, or employer and employee. It is further understood and agreed that excepting as herein provided, the Contractor shall be and remain free from the direction and control of the Company in all particulars in the performance of this agreement."

But even beyond the contract, what did Moles think was his arrangement with St. Regis? He was asked:

"What was your understanding when you signed your log hauling contract, 185, that we previously identified here, was it your intention to be an independent contractor, what we call a gypo? A. I don't know, we signed a contract so that we could work is the way I understood it. *I knew we couldn't draw unemployment from it or protection for insurance or anything.*" (Emphasis added)

The first provision of the "ABC Test" is clearly met by

the uncontroverted facts, St. Regis exercised only control over Moles as to the result of the work. As to the second provision, Moles did drive his truck upon St. Regis property to receive loads at the loading areas and again to dump the loads at the unloading docks, but in our opinion this alone cannot create an employer-employee relationship. As to the third provision, the only conclusion that can be reached from the facts in this case is that Moles is in business for himself, and as such is an independent contractor.

The district court is directed to reverse its order and judgment and enter one reversing Commission Decision No. 936; thereby holding that services performed by Moles under the written contract with St. Regis are not employment subject to the Unemployment Compensation law of Montana.

MR. JUSTICES JOHN C. HARRISON, CASTLES, DALY and HASWELL, concur.