No. 85-423

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

GYPSY HIGHVIEW GATHERING SYSTEM,
INC.,

Petitioner and Appellant,

-vs-

ROBERT L. STOKES,

Respondent and Respondent.

APPEAL FROM: District Court of the Ninth Judicial District,
In and for the County of Glacier,
The Honorable R.D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Frisbee, Moore & Stufft; John P. Moore, Cut Bank,
Montana

For Respondent:

Murphy, Curtis & Burk; R. L. Stoney Burk, Choteau,
Montana

Submitted on Briefs: Jan. 30, 1986

Decided: April 10, 1986

Filed: APR 10 1986

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Gypsy Highview Gathering System, Inc. (GHGS), appeals the July 3, 1985, order of the Ninth Judicial District Court, County of Glacier, affirming a decision of the Board of Labor Appeals awarding unemployment compensation benefits to its employee, Robert L. Stokes. We affirm.

Robert Stokes was hired by GHGS as a gas plant employee on November 15, 1982. Stokes had previously worked seven years at another gas plant. His starting monthly wage at GHGS was $1500. After three months, Stokes received a $100 a month raise. Over the course of the next year, Stokes allegedly complained repeatedly to his employer about his wage and about working conditions at the plant. In November of 1983, Stokes requested a $400 a month raise. His employer requested that Stokes wait until February, when his salary would increase to an amount closer to that of the national standard. On February 1, 1984, Stokes' pay check reflected another $100 a month raise. Stokes quit his job that same day.

On February 13, 1984, Stokes filed a claim seeking unemployment benefits. On the claim form, Stokes listed his main reasons for quitting as: "working conditions, safety of equipement, (sic) lack of safety equipment - substandard. Told employer wages were too low for work performed (aver. nat. scale $2500.00/month) & condition of equipement (sic) (also alone during shift handling acid gases - H2S). Employer would not raise wages."

Stokes was initially determined to be ineligible for unemployment benefits on February 23, 1984, for the following reasons:

> You voluntarily left your employment because of dissatisfaction with the working conditions. The

evidence in the record does not establish the conditions were substandard or detrimental to your well-being. Your separation was without good cause.

Stokes sought a redetermination, following which his claim was again denied on March 20, 1984. The redetermination deputy stated:

Your past employer maintains that the inspections made by the Quality Air Control Bureau and the EPA showed no problems in the working conditions. Additionally, the insurance inspection passed. All inspections were done during this past month. He further states that goggles were available in the office for workers.

. . . Your employer further states that you were hired at $1500 per month and advised that this wage would increase to $1600 at the end of the 3 month probationary period. The information in the record does not establish that the employment was union employment nor does it show that you were promised a specific wage increase to $2371 per month.

The work is not shown to be unsuitable and the decision dated 2/23/84 remains in effect.

Stokes appealed that decision to an appeals referee, claiming that the inspections were performed after Stokes' termination. A telephone hearing was had April 9, 1984, following which the redetermination denying benefits to Stokes was affirmed.

Next, Stokes appealed to the Board of Labor Appeals. Another telephone hearing was had June 5, 1984. Stokes, John Moore, attorney for GHGS, Lloyd Peterson, Stokes' supervisor while employed at GHGS, and A.A. Arras, Jr., controller of GHGS, participated. The Board of Labor Appeals, by a two-to-one vote, reversed the previous rulings and held Stokes to be entitled to unemployment benefits. In so holding, the Board found that Stokes quit his employment because of low wages and dangerous working conditions. The Board then held that:

[T]he evidence does not justify the conclusion that the claimant had good cause for leaving insofar as

3

the salary question is concerned . . . On the other hand the evidence before the Board establishes that during a period from November 11, 1979 through January 14, 1984 there were eight injuries in the employment where claims were made to the Workers Compensation Division. During that period of time 14 people were employed at the place of employment of the claimant. In addition to that on November 29, 1983, it was pointed out to the employer by the Department of Health and Environmental Sciences of the State of Montana that they had been in violation, at least since 1982, in connection with permit requirements, insofar as making emissions into the atmosphere, particularly SO2 emissions. The evidence further establishes that after an inspection by the Occupational Safety and Health Administration, it was determined that written standard operating procedures governing the selection and use of respirators was not established and that self-containing breathing apparatus was not provided at the plant site. The testimony of the claimant further establishes that there were additional shortages of safety equipment immediately available to employees working in the place of employment. After a walk around inspection on April 10, 1984, conducted by the Occupational Safety and Health Administration, it was determined that the employer should plumb in an eyewashing facility, should install an H2S alarm system in the scrubbing tower room and should establish a written respiratory program. That under all of the circumstances and considering the nature of the occupation within which the claimant was working where hazardous chemicals are in the working environment and to which the employees are often exposed the claimant had good cause for leaving the employment.

It became GHGS's turn to appeal, this time to the District Court of the Ninth Judicial District. In an opinion reflecting the trial judge's frustration with the standard controlling his review of the Board's order, substantial evidence was found to support the Board's decision. GHGS now appeals to this Court, raising the following two issues:

1. Is the finding of "good cause for leaving employment" supported by substantial evidence?

2. Was Stokes justified in quitting his job on the basis of substantial evidence in the record?

The Montana Administrative Procedures Act does not apply to Board of Labor Appeals' decisions. City of Billings v. Montana Board of Labor Appeals (Mont. 1983), 663 P.2d 1167,

4

1169, 40 St.Rep. 648, 649. Rather, § 39-51-2410(5), MCA, sets forth the scope of judicial review of the Board's decisions.

(5) In any judicial proceeding under 39-51-2406 through 39-51-2410, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law. Such action and the questions so certified shall be heard in a summary manner and shall be given precedence over all other civil cases except cases arising under the workers' compensation law of this state.

This statutory standard of review has been examined and discussed in a number of cases. See for example, Jordan v. Craighead (1943), 114 Mont. 337, 136 P.2d 526; Noone v. Reeder (1968), 151 Mont. 248, 441 P.2d 309; Kirby Co. of Bozeman, Inc. v. Employment Security Division (Mont. 1980), 614 P.2d 1040, 37 St.Rep. 1255; City of Billings, supra; and Dick Irvin, Inc. v. Montana Department of Labor (Mont. 1983), 673 P.2d 1271, 40 St.Rep. 2086.

In Kirby, 614 P.2d at 1042-1043, 37 St.Rep. at 1257, this Court stated:

Under the plain meaning of this statute and the case law interpreting it, the District Court must treat the findings of the Board as conclusive, if the findings are supported by the evidence and in the absence of fraud. Noone v. Reeder (1968), 151 Mont. 248, 252, 441 P.2d 309. The District Court should, therefore, limit its review of the findings of the Board to a consideration of whether they are supported by the evidence.

"Supported by the evidence" means supported by substantial evidence. Substantial evidence is something more than a scintilla of evidence, but may be less than a preponderance of the evidence. In fact, we held in Jordon v. Craighead, 114 Mont. at 343, 136 P.2d at 528:

Thus the sole question for the court with relation to the evidence is one of law, namely, whether the findings are supported by substantial evidence, regardless of whether there is also substantial evidence or even a preponderance of evidence to the contrary.

5

This same standard applies to this Court when reviewing a decision of the Board of Labor Appeals. Applying this standard, we find substantial evidence to affirm the decision of the Board.

Every fact, except one, relied on by the Board in making its determination that the working conditions at GHGS were unsafe is supported by evidence presented to the Board. The exception is the Board's finding that no self-contained breathing apparatus was available for the employee's use. This finding is incorrect. Appellee's Exhibit No. 2, a report from the Occupational Health and Safety Administration, states that although such an apparatus is available at the plant, no written procedure regarding its use is available. This one error does not, however, substantially alter the evidence supporting the Board's conclusions that an unsafe working environment existed.

Appellee's Exhibit No. 6 indicates that since the opening of the plant in 1979, there have been in fact eight accidents which merited the filing of a workers' compensation claim.

Appellee's Exhibit No. 4 is a letter from the United States Environmental Protection Agency informing GHGS that it was in violation of certain standards governing the emission of $SO_2$ into the atmosphere. This exhibit confirms Stokes' allegation that he was exposed to poisonous gases while employed at GHGS.

The OSHA report, discussed above, recommends that GHGS: 1) install an eye-washing facility; 2) install an H2S alarm system; and 3) establish a written respirator program.

Appellant would have us examine other evidence in support of its claim that working conditions at the plant were safe. However, it is not our job to weigh conflicting

6

evidence presented to the Board. We must only determine whether there is evidence to support the Board's findings.

Thus the real question becomes whether the working conditions were so unsafe that Stokes had good cause for terminating his employment. Again we must defer to the decision of the Board. The evidence indicates numerous safety and health violations by GHGS. The Board, with its expertise in the area, is in the better position to determine what is and is not safe. Further, an employee need not wait to be seriously injured before acting to remove himself from an unsafe working environment. There is substantial evidence to support the Board's decision that Stokes had good cause to quit his job at GHGS.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

7

Mr. Justice John C. Harrison, dissenting:

I dissent.  Viewing the facts of this case as liberally as I can in favor of the respondent, the prevailing party below, I fail to find substantial evidence to justify a decision supporting a finding of "good cause" by the Board of Labor Appeals.  The plaintiff here quit his job because he didn't get a raise in wages he thought he should get.  He now shakes the unemployment fund for benefits I feel he is not entitled.  It is interesting to note that there were three separate hearings on this claim and two previous referees denied the claim before the action of the Board setting on a third hearing.  Here in addition to drawing down unemployment payments, the plaintiff has in addition income  from his general store, a post office and farming operations.  It is little wonder we are having problems financing the fund with these kinds of awards!

John Conway Harrison
Justice

8