No. 89-281

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

JOE JOHNSON,

        Petitioner and Appellant,

    -vs-

MONTANA DEPARTMENT OF LABOR & INDUSTRY,

        Respondent and Respondent.

APPEAL FROM:  District Court of the Eighth Judicial District,
             In and for the County of Cascade,
             The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Larsen & Neill; Kenneth R. Neill, Great Falls, Montana

    For Respondent:

        Claren Neal, Dept. of Labor & Industry, Helena, Montana

Submitted on Briefs:  Oct. 25, 1989

Decided:    December 19, 1989

Filed:

_____
                Clerk

FILED: '89 DEC 19 AM 11 53 ED SMITH, CLERK MONTANA SUPREME COURT

Justice John Conway Harrison delivered the Opinion of the Court.

Joe Johnson, a Great Falls homeowner, appeals the decision of the District Court confirming a holding by the Board of Labor Appeals. The decision upheld a finding that a carpenter who had worked on the remodeling of Johnson's home was his employee and Johnson therefore owed unemployment insurance tax on the employee's wages. We reverse.

Only one issue is presented:

> Did the District Court err when it found that there was substantial evidence to support the decision of the Board of Labor Appeals that Mike Voeller, the worker in question, was an employee and not an independent contractor under the AB test of § 39-51-201(14), MCA?

Joseph V. Johnson, the petitioner and appellant, is a food broker in Great Falls, Montana. When Johnson and his wife, Mary, bought a new home they contacted their former neighbor, a building contractor, to see if he would be interested in remodeling the new house. The neighbor declined the job, but indicated his son, Mike Voeller, might be able to do the carpentry work. Johnson then contacted Mike Voeller who, along with a Mr. Pontdt, agreed to do the remodeling job.

At the time they engaged Voeller and Pontdt to remodel, the Johnsons were not sure exactly what they wanted done to their new home or how much they could afford. They did know they wanted the kitchen enlarged and remodeled and a bedroom, bathroom, porch and deck added. After reviewing the project and discussing finances, the parties agreed that the work would be done on an hourly basis rather than by bid, with Voeller and Pontdt each receiving $7 per hour and the Johnsons paying for materials.

2

Voeller and Pontdt each had their own contracting businesses. Although he had not formally incorporated, Voeller called himself Mike Voeller, Inc. Voeller had his own tools and a small shop in his home. Both before and after the Johnson job Voeller performed independent contracting jobs as a carpenter, doing remodeling, roofing, siding and cabinet making. For several months immediately preceding the Johnson job, Voeller worked for wages as a carpenter for a firm known variously as B-A-C, M-S-C, and Hallmark. During the three years Voeller did carpentry work, the only time he ever worked for wages was his stint with B-A-C. After Voeller completed the B-A-C and Johnson jobs, he applied for unemployment benefits thinking he was entitled to unemployment benefits from his work at B-A-C. However, Voeller did not believe his work for Johnson entitled him to unemployment benefits.

The direction Voeller and Pontdt received from Johnson was minimal. Johnson would discuss options with the carpenters, and Voeller and Pondtd would tell Johnson whether they could or could not carry out his idea. Voeller and Pontdt would arrange for and hire other building professionals such as the electrician, perfa-taper and plumber, all of whom were also paid on an hourly basis. As the work progressed Johnson would, as customary, approve the final construction plans and select the finish materials to be used.

When Voeller applied for unemployment the Department of Labor and Industry determined Voeller to be Johnson's employee, based on questionnaires completed by the two men. The Department found, therefore, that Johnson owed the Department for past unpaid unemployment contributions during the period Voeller worked for Johnson.

A redetermination hearing before an Appeal's Referee confirmed Voeller's status as an employee. Johnson then appealed the determination to the Board of Labor Appeals. Following a telephone hearing, the Board of Labor Appeals hearing officer affirmed the Department's conclusion, finding Voeller an employee under §§ 39-51-203(4) and 39-51-201(14), MCA. On judicial review the District Court upheld the earlier findings that Voeller and others similarly situated were Johnson's employees, and Johnson now appeals the court's decision.

The standard of review for cases involving claims before the Board of Labor Appeals is found in Title 39, Part 24 of Chapter 51:

> In any judicial proceeding under 39-51-2406 through 39-51-2410, the findings of the board as to facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law.

Section 39-51-2410(5), MCA.

Accordingly, those facts, as the Board of Labor Appeals found them to exist, will stand if supported by the evidence, absent fraud. Recent case law has held that "supported by the evidence" means supported by substantial evidence, which is "something more than a scintilla of evidence, but may be less than a preponderance of evidence." Gypsy Highway Gathering System, Inc. v. Stokes (1986), 221 Mont. 11, 15, 716 P.2d 620, 623. See also Larry's Post Co., Inc. v. Unemployment Insurance Division (Mont. 1989), 777 P.2d 325, 46 St.Rep. 1193. While the substantial evidence test gives deference to the agency fact finder, the court's judicial review must nonetheless be "searching and careful, subjecting the agency's decision to close judicial scrutiny." Cranston

v. Clark (9th Cir. 1985), 767 F.2d 1319, 1321 (citing Memorial, Inc. v. Harris (9th Cir. 1980), 655 F.2d 905, 912).

More importantly, we cannot permit the letter of the law to transcend the spirit of the law. As we noted when previously faced with this question:

> We feel that whether a person performing services is an employee or an independent contractor is the question before us, and statutes used as guides in making such determinations must not be distorted to allow persons who are truly independent in their operation to be held employees merely for tax purposes and resulting benefits derived from an employer-employee relationship.

St. Regis Paper Co. v. Unemployment Compensation Comm'n (1971), 157 Mont. 548, 552, 487 P.2d 524, 526.

The two-part test to determine whether an individual is an independent contractor is found at § 39-51-201(14), MCA:

> "Independent contractor" means an individual who renders service in the course of an occupation and:
>
> (a) has been and will continue to be free from control or direction over the performance of the services, both under his contract and in fact; and
>
> (b) is engaged in an independently established trade, occupation, profession, or business.

This test, formerly known as the ABC test, was amended by the 1987 Legislature dropping a third prong of the test. The amended version of § 39-51-201(14), MCA, is now called the AB test, and its emphasis, as under the ABC test, and at common law, is control. This Court has previously recognized four factors to consider in determining if the right to control exists: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment;

5

and (4) right to fire. Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 425, 584 P.2d 1298, 1301-02 (citing Larson's Workmen's Compensation Law, Vol. 1A, § 44.31, p. 8-35).

The Hearings Examiner addressed the first factor, exercise of or right to control, in his Finding of Fact No. 4: "The Appellant asked for advice from the carpenters as well as directed their work or chose among options or suggestions made by the carpenters as their work progressed. The Appellant also chose, as needed, the finish materials purchased and used." In affirming the decision, the District Court relied on the same sort of evidence, finding in its memorandum and order that:

> [T]he record contains evidence that shows the petitioner made numerous changes in the scope and extent of the work to be performed. The petitioner chose the materials and paid the supplier directly for supplies utilized. The petitioner also had the right to approve the work performed and indicated he had the right to make workers work faster.

All of the facts pointed to by the Hearings Examiner and the District Court to support their finding of control are usual and ordinary practices in the carpentry business. The finding does not so much show control as it does indicate a business practice. Mr. Voeller testified that Mr. Johnson did not correct the carpenters as to details in the performance of their work and expected them to use their expertise as carpenters to carry out the remodeling project. Mr. Johnson testified that he would tell Voeller and Pontdt his ideas for remodeling and the two carpenters would tell him if it was possible. In other words, Johnson told Voeller and Pontdt what he wanted done but not how to do it.

This Court has often reiterated the control test in these terms:

> An independent contractor is one who renders service in the course of an occupation, and represents the will of his employer only as to the result of his work, and not as to the means whereby it is accomplished, and is usually paid for the job.

St. Regis Paper Co., 157 Mont. at 552, 487 P.2d at 526 (quoting Kimball v. Ind. Acc. Bd. (1960), 138 Mont. 445, 448, 375 P.2d 688, 690). It is evident that Johnson merely controlled the result of the carpenters' work, not the methods Voeller and Pontdt used to accomplish the end result.

As to the second factor, method of payment, evidence showed that both carpenters were paid on an hourly basis and usually submitted their hours to the Johnsons weekly. As a general rule, payment on a time basis is strong evidence of employment status while payment on a completed project basis is consistent with, but not conclusive of, independent contractor status. Solheim v. Tom Davis Ranch (1984), 208 Mont. 265, 273, 677 P.2d 1034, 1038.

There is testimony that the method of payment in the carpentry industry is accomplished in one of three ways--on a bid, hourly or cost-plus basis. Mr. Voeller testified that he had done projects on both a bid and hourly basis, and that he usually did smaller jobs on a bid basis. Voeller stated that he commonly did larger jobs on an hourly basis and, after discussion with Johnson, all parties decided that hourly pay would be best on the Johnson job because the Johnsons did not know exactly what they wanted done or how much they could afford.

The third test regarding furnishing of equipment preponderates in favor of an independent contractor status between Voeller and Johnson. This Court has adopted the view of Larson's Workmen's Compensation Law, Vol. 1C, § 44.34, pp. 8-95 - 8-104, in Solheim, that an employment relationship

7

usually exists where the employer furnishes equipment, but an employee furnishing his own equipment does not preclude an employment relationship. In Solheim, we concluded that furnishing equipment indicates an independent contractor relationship. Solheim, 677 P.2d at 1039.

The right to fire is the final factor determining control. In discussing this final element the Larson treatise notes:

> The right to terminate the relationship without liability is not consistent with the concept of independent contract, under which the contractor should have the legal right to complete the project contracted for and to treat any attempt to prevent completion as a breach of contract.

Larson's Workmen's Compensation Law, Vol. 1C, § 44.35, pp. 8-149 - 8-158.

Because the contract between the parties was oral, the only evidence before the District Court and the hearings examiners regarding termination comes from the testimony of Voeller and Johnson. Reviewing the testimony, it is apparent that neither man was certain of his rights as to the ability to terminate. When asked by the examiner if Johnson could have decided he no longer wanted Voeller's services, Voeller replied that Johnson "probably" could have. Johnson's answer when asked about his ability to fire the carpenters was equally as tentative:

> I think, like I testified earlier, if it would have taken them, you know, a real long time. To me it seemed like a long time, and not being a carpenter, you know, it's really questionable what a long time is. I'm sure somewhere along the line I could have, yes.

Johnson's reply indicates his belief that, had the carpenters not lived up to their part of the bargain, he would have been

8

justified in terminating the business relationship. However, neither man was directly asked if he believed Johnson could fire Voeller without liability.

As discussed above, three of the four control factors substantiate a finding of an independent contractor relationship between Johnson and Voeller. First, Johnson did not possess the right to control how Voeller accomplished the remodeling job, only the right of a homeowner to tell the carpenter what he wanted done as the house was remodeled. Secondly, Voeller and Pontdt furnished all of the equipment necessary to complete the job. Finally, Johnson's right to fire the carpenters was not absolute. As to the other factor, method of payment, while hourly pay usually evidences employment, custom in the industry often finds carpenters working on a per hour basis, and is not conclusive of either an independent contractor or employment status. It must be remembered that the purpose of this test is not

> [t]o widen the scope of the term "employment" as used in the statute so as to include therein persons not otherwise included, but . . . to exclude from the definition of the term "employment" persons who might, except for the application of these tests, be included therein.

St. Regis Paper Co., 487 P.2d at 526 (quoting National Trailer Convoy, Inc., v. Undercofler (Ga.App. 1964), 137 S.E.2d 328, 331).

We hold that under the A portion of the AB test of § 39-51-201(14), MCA, Voeller meets the definition of an independent contractor.

Thus, we turn to the B portion of the test which requires the independent contractor to be engaged in an independently established occupation. The District Court, finding that the relationship between Voeller and Johnson

9

failed part A of the test, did not address part B. The record clearly demonstrates that Voeller is engaged in a trade independent of Johnson's. Johnson is a food broker who sells groceries for a living. Contracting and carpentry have no relation whatsoever to what Johnson does for a living. Voeller is a carpenter and has been since 1985. Accordingly, Voeller also satisfies the B portion of the independent contractor test.

Having met the statutory requirements of § 39-51-201(14), MCA, we hold that Voeller is an independent contractor rather than employee of Johnson and we, therefore, reverse.

_John Conway Harrison_
Justice

We concur:

_J. A. Turnage_
Chief Justice

_Diane G. Barz_

_John C. Sheehy_

_R. J. Weber_

_____
Justices

Justice R. C. McDonough dissents.

The majority have in essence reviewed this case de novo. They have not applied the proper standard of judicial review.

The standard of review of this Board of Labor Appeals determination is set out in § 39-51-2410(5), MCA, as follows:

> (5) In any judicial proceeding under 39-51-2406 through 39-51-2410, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law.

This was the standard employed by the District Court as set out in paragraph two of its Memorandum and Order.

"Supported by evidence" has been held by this Court to mean supported by substantial evidence. Jordan v. Craighead (1943), 114 Mont. 337, 136 P.2d 526. A finding of fact under the circumstances here is binding on the Court if it is "supported by substantial evidence, regardless of whether there is substantial evidence or even a preponderance of evidence to the contrary." Gypsy Highview Gathering System, Inc. v. Stokes (1986), 221 Mont. 11, 716 P.2d 620, quoting Jordan, 114 Mont. 337, 136 P.2d 526. Substantial evidence "is something more than a scintilla of evidence, but it may be less than a preponderance of the evidence." Gypsy Highview Gathering System, Inc., 716 P.2d at 623.

Is there more than a scintilla of evidence here supporting the factual findings of the Board of Labor Appeals and the hearing examiner?

The burden here is on the appellant to show that the worker is an independent contractor and there is a statutory test to determine the worker's status. Section 39-51-201(4), MCA, provides:

11

(14) "Independent contractor" means an individual who renders service in the course of an occupation and:

(a) has been and will continue to be free from control or direction over the performance of the services, both under his contract and in fact; and

(b) is engaged in an independently established trade, occupation, profession, or business.

We need only to discuss "(a)". As to that part, we have cited four factors in determining degree of control in workers' compensation cases which are also applicable here: 1) direct evidence of right or exercise of control; 2) method of payment; 3) furnishing of equipment; and 4) right to fire. See Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont 419, 584 P.2d 1298 (1978), and Solheim v. Tom Davis Ranch (1984), 208 Mont. 265, 677 P.2d 1034. We said in Sharp:

Larson's treatise enumerates four factors to consider when attempting to determine right of control in a given situation. Those factors are: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. Larson, § 44.31., p. 8-35. The treatise further points out that the consideration to be given these factors is not a balancing process, rather ". . . independent contractorship . . . is established usually only by a convincing accumulation of these and other tests, while employment . . . can if necessary often be solidly proved on the strength of one of the four items [above]." Larson, supra.

From the above it is clear that all four factors are needed to show a worker is an independent contractor.

Looking at the factor of the furnishing of equipment, the facts are clear the worker furnished his own tools or equipment and this was a Finding (No. 5) by the examiner. The appellant has met his burden as to this factor required for finding the worker an independent contractor.

Second, as the method of payment here the worker was paid by the hour. "It is a strong indication" the status was that of employee. Sharp, 584 P.2d at 1302. Larson, § 44.33, p. 8-41. The workers here were paid weekly for the hours worked that week. This payment by the hour is more than a scintilla of evidence. The appellant claims the reason the hourly method was selected was because the appellants were unclear as to the extent of what they wanted done and were limited as to the amount of money they could spend. The appellant did decide what work was to be done. The weight to be given to the fact of hourly payment and its "strong indication" and the weight to be given to appellant's reason for doing it, is within the province of the fact finder, neither one is conclusive either way.

Relative to direct evidence of right or exercise of control, this also is a question of fact. Is there a scintilla of evidence supporting direct control? Changes were made by appellant during the course of the work. Workers did as directed by the changes. The appellant paid an hourly rate and expected the workers to do what he wished. Appellant made day to day decisions as to materials used and paid for them directly to supplier (amounting to over $15,000.00). Appellant had the right to approve the work. See transcript p. 32, lines 11-15 as follows:

> BAY: You were done upon, er, upon--like the inspection, did he inspect it and have any changes made or what?
>
> VOELLER: Oh ya, he had changes all the way through it, you know, but when we were finally done, you know, it was done. He looked at it and it was done.

The appellant also felt he had the power to push them along and insist they work faster. This is certainly more than a

13

scintilla of evidence of direct control and it would make a prima facie case, Findings 3 and 4 of the examiner are supported by this evidence.

Even if there was not substantial evidence to support the findings of the examiner as to factors of control and method of payment, there is no question there is more than a scintilla of evidence to support Finding 6 of the examiner which is as follows: "Either the appellant or the carpenters could terminate the work relationship without liability." There was no written agreement, only oral.

In the examination of Mike Voeller, a worker, by the hearing examiner the following questions were asked and the following answers given:

> EXAMINER: During the course of the project could you have decided you didn't want to do anymore and stop?
>
> VOELLER: Ya, I could have.
>
> EXAMINER: All right. Could Mr. Johnson have just decided he was . . . didn't want to employ you anymore or be associated with you anymore and tell you he wanted somebody else to do it?
>
> VOELLER: He probably could've if he'd wanted, ya.

The following discourse also took place between appellant Johnson and attorney for respondent.

> BAY: Mr. Johnson, if you weren't happy with the work or felt these workers weren't working fast enough, could you have fired them?
>
> JOHNSON: I think, like I testified earlier, if it would have taken them, you know, a real long time. To me it seemed like a long time, and not being a carpenter, you know, it's really questionable what a long time is. I'm sure somewhere along the line I could have, yes.

14

This testimony of the two principal participants is more than a scintilla of evidence that either one could have terminated the relationship without liability. Mr. Voeller's testing is quite clear taken as a whole. It is not precise because of the word "probably" as to his understanding of appellant's right. The witness is not a user of words but is a trademan. Voeller certainly felt he could quit.

Of the four factors to be met by appellant only one, the furnishing of equipment, has been met. The determinations by the examiner against appellant of the other three questions of fact are supported by substantial evidence.

Section 39-51-2410(5), MCA, requires that courts accept the findings of fact of the agency if those findings are supported by substantial evidence. The District Court applied the standard and so should we.

_____
Justice

Justice William E. Hunt, Sr.:

I join in the dissent of Justice McDonough.

_____
Justice