No. 98-604

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 335N

BENJAMIN L. SHUFFIELD,

Petitioner and Appellant,

v.

MONTANA DEPARTMENT OF LABOR

AND INDUSTRY, BOARD OF LABOR

APPEALS, and THE CITY OF MILES CITY,

MONTANA,

Respondents and Respondents.

APPEAL FROM: District Court of the Sixteenth Judicial District,

In and for the County of Custer,

The Honorable Gary L. Day, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Benjamin L. Shuffield, pro se, Miles City, Montana

For Respondents:

Robert J. Campbell, Department of Labor and Industry, Helena, Montana; James T. Carr, City Attorney, Miles City, Montana

Submitted on Briefs: July 22, 1999

Decided: December 29, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

¶ Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public

document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶ Benjamin L. Shuffield (Shuffield) appeals from an order issued on September 22, 1998, by the Sixteenth Judicial District Court, Custer County. We affirm.

¶ The issues on appeal are restated as follows:

¶ (1) Did the District Court correctly determine that the administrative record contains substantial credible evidence supporting the decision of the Board of Labor Appeals?

¶ (2) Was Shuffield denied due process?

Factual and Procedural History

¶ Shuffield was employed as a permanent, part-time water meter reader for the City of Miles City for approximately three years. Over the course of his employment, Shuffield had been given several verbal and written warnings based on numerous customer complaints stating that they did not want Shuffield in their homes, on Shuffield's consistent errors in meter reading, and on Shuffield's general hostility towards his co-workers. The last day that Shuffield worked was August 21, 1996, the close of the August cycle of meter reading. The next cycle of meter reading began on September 9, 1996, and Shuffield was expected to be at work on that day.

¶ On September 9, Shuffield failed to appear for work and did not call in with an excuse. On September 10, Shuffield showed up for work approximately twenty minutes late and was in an "agitated" state. Shuffield demanded a meeting with the Mayor of Miles City, citing degrading racial remarks by his co-workers and a general atmosphere of harassment. Shuffield was referred to the Miles City Utility Director. Shuffield claimed that he had been sick on September 9 and wanted to take sick leave for that day.

¶ When the Utilities Director asked Shuffield for the names of individuals involved and the dates of the alleged racial incidents, Shuffield refused to provide the information and stated that he wanted to take a leave of absence to give his employer an opportunity to respond to his complaint. Shuffield was granted approval for using his remaining twenty-two hours of accrued annual leave for September 10-12, 1996, but was advised to return to

work on September 13. Later Shuffield submitted a request to use eighty hours of annual leave for an extended leave of absence for the entire month of September, citing personal reasons.

¶ On September 16, Shuffield's employer advised him in writing that his request for a leave of absence had been approved. However, all of Shuffield's accrued vacation leave had been used and could not cover his leave of absence. Shuffield was again asked for the names, dates, and descriptions of the alleged incidents of discrimination or harassment in the workplace. On September 20, 1996, Shuffield wrote his employer and demanded that the employer order "sensitivity training" for its employees or else he would press forward with his complaint. Shuffield also advised his employer that it could not legally require that he identify any co-workers alleged to have harassed him.

¶ Next, Shuffield advised his employer in writing that he was seeking medical treatment, and submitted a written request to use fifty-eight hours of sick leave for the period beginning September 12 and ending September 23. Shuffield was advised that he had only twenty-six hours of accrued sick leave which would be approved for the period beginning September 18 and ending September 23. Shuffield's employer also requested medical verification from Shuffield, since the collective bargaining agreement mandated that any extended absence due to illness required a doctor's excuse.

¶ On October 1, 1996, Shuffield wrote to his employer and stated that his medical problems were resolved. However, Shuffield indicated that he did not think he could return to work for the next meter reading cycle. Shuffield's request for a leave of absence could not be approved because he had failed to provide medical documentation and had used up all of his accrued sick and vacation leave. On October 7, 1996, Shuffield was discharged from employment because of his performance problems, and because he had refused to return to work after using all of his accrued leave time.

¶ Shuffield then filed a claim for unemployment benefits with the Montana Department of Labor and Industry (the Department). The Department determined that Shuffield was ineligible to receive unemployment benefits because he had left work without good cause and had refused to return to available work. Shuffield appealed, and a telephonic hearing was scheduled before a Department Appeals Referee. Shortly after the start of the hearing, Shuffield refused to participate and departed. Thus, the hearing was conducted without Shuffield's participation. Subsequently, the Appeals Referee issued a decision, affirming the Department's initial determination that Shuffield had left his employment without good

cause and, therefore, was ineligible for unemployment benefits.

¶ Shuffield then appealed to the Board of Labor Appeals (the Board). Shuffield waived his right to participate in a hearing before the Board. The Board affirmed the decision of the Appeals Referee. Thereafter, Shuffield filed a Petition for Judicial Review with the District Court. The court found ample evidence in the record to sustain the previous administrative determinations and affirmed the Board.

## Discussion

¶ (1) Did the District Court correctly determine that the administrative record contains substantial credible evidence supporting the decision of the Board?

¶ Section 39-51-2410(5), MCA, sets forth the applicable standard of review of a Board decision in unemployment cases:

> In any judicial proceeding under 39-51-2406 through 39-51-2410, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law. . . .

Section 39-51-2410(5), MCA. This statute strictly limits the scope of judicial review of a Board decision. See Ward v. Johnson (1990), 242 Mont. 225, 228, 790 P.2d 483, 485.

¶ The statutory phrase "supported by evidence" has been construed to mean supported by substantial evidence. Reynolds v. Pacific Telecom, Inc. (1993), 259 Mont. 309, 314, 856 P.2d 1365, 1368. Substantial evidence is "something more than a scintilla of evidence, but may be less than a preponderance of the evidence." Gypsy Highview Gathering Sys., Inc. v. Stokes (1986), 221 Mont. 11, 15, 716 P.2d 620, 623. On judicial review, the sole inquiry with respect to the evidence is " 'whether the findings are supported by substantial evidence, regardless of whether there is also substantial evidence or even a preponderance of the evidence to the contrary.' " Gypsy Highview, 221 Mont. at 15, 716 P.2d at 623 (quoting Jordan v. Craighead (1943), 114 Mont. 337, 343, 136 P.2d 526, 528).

¶ Since the Board adopted the findings of fact made by the Department's Appeals Referee, we will review those findings as if they were made by the Board. Pursuant to § 39-51-2410 (5), MCA, if the findings of the Board are supported by substantial evidence, then those

findings are conclusive in nature and both the District Court's and this Court's jurisdiction is limited to questions of law. We review a trial court's conclusion of law as to whether it is correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

¶ Therefore, we must first decide whether substantial evidence supports the Board's decision and "not whether on the same evidence [we] would have arrived at the same conclusion." Ward, 242 Mont. at 228, 790 P.2d at 485. In this case, we are not even presented with any strongly conflicting evidence in the administrative record. Since Shuffield persistently refused to participate in the administrative appeal process, the record was developed almost entirely by Shuffield's employer, Miles City. Based on that record, we conclude that the factual findings of the Board are supported by substantial credible evidence and are conclusive and binding on both the District Court and this Court.

¶ The record reveals substantial evidence that Shuffield's employer received numerous complaints from customers about Shuffield's performance as a water meter reader as well as his personal demeanor. Shuffield was provided with written warnings from his employer concerning his poor job performance. Shuffield made several accusations of harassment in the workplace, but failed to provide his employer with any information to enable the employer to investigate and prosecute Shuffield's complaint. Shuffield then began using up all of his accrued sick and vacation leave until it was exhausted. Finally, he failed to provide his employer with documentation justifying an extended leave of absence for medical reasons. When he effectively refused to return to work, Shuffield was terminated.

¶ Having determined that the Board's findings are supported by substantial credible evidence, we turn to the legal question presented by this case. The Board determined, and the District Court affirmed, that Shuffield was ineligible for unemployment benefits because he left his employment without good cause. By statute, "[a]n individual must be disqualified for benefits if the individual has left work without good cause attributable to the individual's employment." Section 39-51-2302(1), MCA. In turn, the good cause requirement is defined in pertinent part as follows:

> (1) A claimant has left work without good cause attributable to employment if:

> (a) (i) compelling reasons arising from the work environment caused the claimant to leave;

(ii) the claimant attempted to correct the problem in the work environment; and

(iii) the claimant informed the employer of the problem and gave the employer a reasonable opportunity to correct it; or

(b) the claimant left work which the department determines to be unsuitable under 39-51-2304, MCA. . . .

Rule 24.11.457, ARM.

¶ The Board found that Shuffield was the "moving party" in terminating the employment relationship. The Board further found that Shuffield did not return to work for two reasons: (1) because he expected his employer to act on his complaint prior to returning to work; and (2) because of his undisclosed medical condition or conditions. However, the undisputed record shows that Shuffield refused to provide his employer with any factual information regarding the alleged racial incidents with his co-workers, and failed to provide sufficient medical verification of his alleged inability to work. The agency correctly concluded that Shuffield "left work for a personal reason rather than a compelling reason attributable to the employment." Based on the undisputed facts, we affirm the District Court's conclusion that Shuffield's actions "left the employer with no choice but to consider his refusal to work as a constructive quit." We hold that Shuffield left work without good cause related to his employment and, therefore, is disqualified from claiming unemployment benefits.

¶ (2) Was Shuffield denied due process?

¶ Shuffield alleges that the record contains evidence that one or more of the witnesses for Miles City committed perjury, thereby tainting the evidentiary basis for the District Court's decision. Shuffield claims that these fraudulent actions undermine the validity of the judgment. Although Shuffield's allegations of fraud could be addressed in the context of § 39-51-2410(5), MCA, which provides that the Board's findings are conclusive if supported by evidence and absent fraud, we choose to address this issue separately for the sake of clarity. In essence, Shuffield is arguing that he was denied a fair hearing of his unemployment claim because perjured testimony was used to obtain the judgment. In the proceedings below, Shuffield claimed on several occasions that he was denied due process by the alleged fraud. Thus, we will review whether Shuffield received due process.

¶ In making his claim of fraud and perjury, Shuffield relies primarily on the "Appeal Instrument" submitted to the Board. That document outlined Shuffield's allegations of fraud and "collusion" between Miles City and the Department. Specifically, Shuffield claims that facts derived from false testimony provided by witnesses for Miles City at the hearing before the Appeals Referee "went unchallenged" before the Board "because his Appeal Instrument had been withheld by Department employees." Shuffield claims that "through no fault of his own" he was prevented from having the Board consider the "allegations" of fraud in his Appeal Instrument and the "evidence therein." We disagree. Shuffield's rambling and nearly incoherent accusations reveal an unfortunate misunderstanding of the legal process not uncommon among *pro se* litigants. In an adversarial system premised upon the finality of judgments, Shuffield's deep misunderstanding of the legal process is not grounds enough to reopen a matter which Shuffield had a clear opportunity to address below.

¶ After receiving the initial determination of the Department, Shuffield petitioned for an appeal and requested a hearing. Shuffield submitted a loosely organized "file" of documentary materials pertaining to his case for purposes of the appeal. Prior to the hearing, Shuffield was provided with a notice of the scheduled time and date of the telephonic hearing. The notice clearly provided that "[s]ubsequent appeals will be based on the exhibits and testimony presented to the referee at the hearing. Therefore, you must present your entire case at the hearing. This includes all written information, documentation, and people you wish to call as witnesses."

¶ However, shortly after the start of the telephonic hearing, Shuffield announced, "I am leaving the hearing." When asked by the Appeal Referee whether he wished to provide any sworn testimony, Shuffield stated, "I did not come here to provide sworn testimony." When further asked by the Appeals Referee whether he wanted an opportunity to cross-examine any testimony given by the witnesses for Miles City, Shuffield stated, "I do not." Hence, Shuffield abandoned the hearing, and Miles City proceeded to give uncontested testimony surrounding Shuffield's departure from employment. Shuffield's failure to develop the record at this stage of the proceedings was a fatal error.

¶ Shuffield's Appeal Instrument was misplaced during the administrative process and, as a result, it appears to this Court that the Board never considered it in rendering its decision. However, that fact does not change the outcome of this case. Upon appealing to the Board, Shuffield was given a notice that clearly provided as follows: "The Board shall not consider any new evidence introduced at the Board hearing unless good cause is shown

that it was unavailable at the lower appeal hearing." Shuffield waived his right to a hearing before the Board at which he would have been entitled to introduce new evidence upon a showing of good cause. Nonetheless, Shuffield submitted his Appeal Instrument attempting to introduce new evidence into the administrative record, but failed to ever allege that the evidence was unavailable at the hearing before the Appeals Referee. Therefore, Shuffield would not have been able to show "good cause" to introduce the new evidence even had the Board had the Appeal Instrument before it in rendering its decision.

¶ Shuffield concedes that he mistakenly mailed the Appeal Instrument to the wrong address within the Department's organization. This error apparently resulted in Shuffield's Appeal Instrument being misplaced. At the District Court level, Shuffield claimed that the Board had ignored his Appeal Instrument. The court issued an order directing the Department to attempt to locate the document and place it in the record. The Department did eventually locate Shuffield's Appeal Instrument, and the document was forwarded to the clerk of the District Court and placed in the record. However, Shuffield was provided with notice of his right to a hearing before the District Court and, again, waived his right to a hearing. In its order, the District Court found insufficient evidence of fraud and collusion in the record to sustain Shuffield's due process claim. We agree.

¶ Whether in an administrative or judicial tribunal, the right to due process requires notice and an opportunity to be heard. Klundt v. State ex rel. Bd. of Personnel Appeals (1986), 219 Mont. 347, 351, 712 P.2d 776, 779. It is clear that Shuffield was provided with more than ample due process. He received notice and an opportunity for a hearing on three occasions in the appellate process, and now he has been given his day before this Court. Thus, we hold that he received due process of law. See Burris v. Employment Relations Div. (1992), 252 Mont. 376, 379, 829 P.2d 639, 641.

¶ Shuffield's arguments on appeal display a deep confusion as to what constitutes the record on appeal, as well as to how standards of review operate to circumscribe an appellate tribunal's ability to "retry" the material facts. However, that Shuffield chose to appear without the assistance of counsel was his choice. Cf. In re Termination of Wong (1992), 252 Mont. 111, 119, 827 P.2d 90, 95. Likewise, that Shuffield chose to repeatedly waive his rights to a hearing, at which he could have presented testimony and cross-examined witnesses against him, was also his choice. It is axiomatic that "[t]he law helps the vigilant before those who sleep on their rights." Section 1-3-218, MCA.

¶ Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ JIM REGNIER