No. 82-254

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

DAVID D. SOLHEIM,

Claimant and Appellant,

-vs-

TOM DAVIS RANCH, Employer,

and

STATE COMPENSATION INSURANCE FUND,

Defendant and Respondent.

APPEAL FROM: Workers' Compensation Court, The Honorable Timothy Reardon, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Tom L. Lewis, Regnier & Lewis, Great Falls, Montana (Argued)

For Respondent:

J. Daniel Hoven, Agency Legal Services, Helena, Montana (Argued)

Submitted: November 10, 1983

Decided: February 29, 1984

Filed:

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

David D. Solheim (Claimant) appeals from the judgment of the Workers' Compensation Court finding him ineligible for compensation following an injury sustained while unloading a hay truck near Sand Springs, Montana. The Court concluded that claimant was an independent contractor rather than an employee under the Workers' Compensation Act. We affirm.

The issues are:

1. Whether the Workers' Compensation Court erroneously concluded that claimant was an independent contractor rather than an employee within the meaning of the Workers' Compensation Act?

2. Whether the Workers' Compensation Court erred in concluding that claimant was not automatically entitled to benefits because the insurer failed to accept or deny his claim within 30 days as required under section 39-71-606, MCA, even in the absence of an employment relationship under the Act?

In January of 1981, Tom Davis of Tom Davis Ranch agreed to sell 500 tons of hay from his ranch near Augusta, Montana to the 7-W Ranch near Sand Springs, Montana, whose owner had agreed to purchase the hay. Because the hay was needed promptly and because the 7-W Ranch agreed to pay for the hay upon delivery of all 500 tons, Tom Davis contacted approximately 25 trucking businesses, including claimant, in order to arrange delivery of the hay as soon as possible. The offer made by Tom Davis to the truckers, including claimant, was to pay $28 per ton. Payment was to be made to the truckers when all the hay was delivered and when Tom Davis had been paid by 7-W Ranch. All of the contracted truckers were to furnish their own vehicles. Davis advised the truckers, including claimant, that Davis would have a Freeman stacker available to load trucks on certain days of

2

the week when use of that stacker was not otherwise required on his feedlot a number of miles away. Davis also told the truckers there would be help available at the 7-W Ranch to unload. Claimant understood that the truckers would help with the unloading as is the general custom.

Claimant has run his own trucking business since 1972. He describes himself as an "independent trucker" and files his own income taxes as a self-employed individual. The logo on his truck is "Solheim Trucking." Claimant pays for the insurance and licenses on his truck. He carries cargo insurance on his loads and had coverage in effect during the shipping of the Davis hay. Claimant generally does not work for pay on an hourly or weekly basis. Claimant works for persons other than Davis.

On January 17, 1981, approximately ten semi-trucks were loaded at the Davis Ranch by use of the Davis Freeman stacker. Claimant was unable to be there on January 17. On the following day, January 18, claimant and two other truckers, claimant's father and Dick McAdams, loaded their trucks at the Davis Ranch. They used McAdams' tractor for loading because the Davis stacker was not available that day. Tom Davis was present for about ten minutes and pointed out the haystack from which the bales were to be loaded. He also drew a rough map showing the way from Sand Springs to the 7-W Ranch. Davis gave no instructions as to the loading or unloading of the trucks or the route to the 7-W Ranch. Davis testified that if he were dissatisfied with the way a trucker was doing his job, he had "a right to tell him about it and correct the situation."

Claimant, his father, and McAdams drove their three loaded trucks together to the 7-W Ranch and were directed to the unloading area. Because there was no one present to help them, they unloaded McAdams' truck first and then moved on to

3

the elder Solheim's truck. At this point, Drew Burke of 7-W Ranch arrived and began to assist with the unloading. Claimant was on the stack when Burke threw a bale from the truck, knocking claimant to the ground with a resulting fracture to his left hip bone and left femur. After preliminary treatment by a veterinarian, claimant was flown to Great Falls for hospitalization. Claimant's brother continued driving claimant's truck, transporting hay from the Davis Ranch to the 7-W Ranch until the entire 500 tons had been delivered by the various truckers hauling for Davis. Immediately after payment by the 7-W Ranch, Davis paid claimant and all other truckers. The date of payment was approximately one month after the date of injury.

On June 4, 1981, claimant filed a claim for benefits with the Workers' Compensation Division. The claim was timely filed pursuant to section 39-71-601(1), MCA. By letter addressed to claimant and dated June 17, 1981, the claims examiner for the State Compensation Insurance Fund acknowledged the receipt of Solheim's claim for compensation. That letter stated that before compensation benefits can be awarded there must be medical evidence on file and advised that no medical information had been received. The claims examiner therefore stated "We are, therefore, unable to award any compensation at this time." The letter also said that a letter had been mailed to claimant's physician requesting the physician's report. Claimant denied receiving the letter. Claimant did submit additional medical information at a later date.

On July 28, 1981, claimant filed a petition for an emergency hearing. After several vacations of trial dates, trial was held on January 22, 1982. Findings of fact, conclusions of law and judgment for the defendants were entered by the Court on June 11, 1982. The Court concluded

4

in its judgment that claimant was not an employee as defined by section 39-71-118(1)(a), MCA, but rather was an independent contractor as defined by section 39-71-120, MCA. The Court further concluded that claimant was not entitled to benefits under the Act. Claimant appeals from that judgment.

I

Did the Workers' Compensation Court erronously conclude that claimant was an independent contractor rather than an employee under the Workers' Compensation Act?

Claimant maintains that the Court mistakenly concluded he was an independent contractor within the meaning of section 39-71-120, MCA, which states:

> "Independent contractor defined. An 'independent contractor' is one who renders service in the course of an occupation and:
> (1) has been and will continue to be free from control or direction over the performance of the services, both under his contract and in fact; and
> (2) is engaged in an independently established trade, occupation, profession, or business."

Claimant, defendants, and the Workers' Compensation Court agree that the leading Montana case on independent contractors is Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 584 P.2d 1298. In Sharp, this Court adopted the "four-factor test" for right of control as set forth in Larson's Workmen's Compensation Law, Vol. 1C, §44.00, p. 8-31. We stated:

> "Larson's treatise enumerates four factors to consider when attempting to determine right of control in a given situation. Those factors are: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. Larson, §44.31, p. 8-35. The treatise further points out that the consideration to be given these factors is not a balancing process, rather '. . . independent contractorship . . . is established usually only by a convincing accumulation of these and other tests, while employment . . . can if necessary often be solidly proved on the strength of one of the four items [above].' Larson, supra." Sharp, 178 Mont. at 425, 584 P.2d at 1301-02.

In Sharp this Court concluded that Sharp was an employee although she owned an independently established cleaning

5

business because the employer controlled and routinely changed the details of her cleaning work, paid her monthly rather than on a completed contract basis, and could terminate her employment at any time. All of these factors strongly indicated an employer-employee relationship.

In the recent case of Carlson v. Cain (Mont. 1983), 664 P.2d 913, 40 St.Rep. 865, this Court developed the standard articulated in Sharp. Where both factual determinations and legal conclusions are challenged, two standards of review apply. To the extent that factual determinations are questioned, we must apply the test set forth in Sharp and defer to the fact-finder where substantial evidence exists to support the determinations. When, however, an issue raises only a question of law, this Court is free to reach its own conclusions from the evidence presented. Carlson, 664 P.2d at 915-16, 40 St.Rep. at 868-69. In the present case, as in Carlson, questions of both law and fact are presented.

We will first consider the facts of this case in light of the "four-factor test" and whether the facts support the lower Court's conclusion that claimant was acting as an independent contractor at the time of his accident.

(1) Direct evidence of right or exercise of control. While Larson emphasizes that it is the right, and not the exercise of that right, which is conclusive, he points out that "if control of a trucker goes no farther than directions on where to pick up or put down the load, this is usually held to be only a part of the end result." Larson §44.20, p. 8-52. The lower court found that the truckers were free to load as and when they wished, to choose their own route, speed, time of travel, and driver. Concluding that there was little evidence of right or exercise of control, the court stated:

> "Claimant makes much of the fact that Tom Davis told them where to load and unload. In every

6

transportation contract there has to be a shipping point and a destination and in the informal world of transportation of agricultural commodities this fact is equally supportive of a contract relationship."

Claimant contends that general statements that Davis was "the boss" and could correct an improper or dangerous situation should be sufficient to establish an employee relationship. The right of control by the Davis Ranch was limited to those few matters required to insure a satisfactory end result. We conclude there is substantial evidence to support the conclusion of the court that the first factor indicated an independent contractor status.

(2) Method of Payment. Payment on a time basis is strong evidence of employment status. Sharp, 178 Mont. at 425, 584 P.2d at 1302; Larson, §44.33(a), p. 8-74. Payment on a completed project basis is consistent with, but not conclusive of, independent contractor status. Larson, §44.33(c), p. 8-93. Payment on a piece-work or commission basis is consistent with either status and, depending upon other factors, may be an indication of either employee or independent contractor status. Larson, §44.33(b), pp. 8-83 - 8.85. The trial court found that claimant was paid $28 a ton after all the hay was hauled. There is substantial evidence to support that conclusion. This factor weighs heavily against claimant's contention that he was an employee.

(3) Furnishing of equipment. According to Larson, when an employer furnishes valuable equipment, an employment relationship almost invariably exists, but the test does not cut in both directions with equal force. Proof showing a worker furnished his own equipment is not necessarily fatal to a finding of employee status. Larson, §44.34, pp. 8-95 - 8-104. A trucker who is paid by the hour, or performs a continuous service for one employer, or leases his vehicle to another and then drives for that party, may well be an

7

employee. The lower court found that the claimant furnished his own equipment, did not work exclusively for Tom Davis, did not lease his equipment, and was not paid by a time period. There is substantial evidence to support these findings. Claimant argues that Tom Davis supplied an expensive loader to truckers and controlled its use, which indicates employment. In the present case, undisputed evidence shows that claimant did not choose to use any equipment furnished by the Davis Ranch on the day the hay was loaded, and instead used the tractor owned by a fellow trucker. The undisputed facts indicate claimant's freedom to load when and as he chose. We therefore agree with the Workers' Compensation Court conclusion that the furnishing of equipment indicates an independent contractor relationship.

(4) Right to fire. Larson states at §44.35, pp. 8-116 - 8-122.

> "The power to fire . . . is the power to control. The absolute right to terminate the relationship without liability is not consistent with the concept of independent contract, under which the contractor should have the legal right to complete the project contracted for and to treat any attempt to prevent completion as a breach of contract."

In addition at p. 124, Larson notes:

> "Examples could be multiplied in which most of the other indicia - method of payment, furnishing of equipment, skilled nature of the work, sometimes provision by the employee even of his own assistants and insurance, and not infrequently contractual disavowals of right of control and of employment relation - have pointed toward independent contractorship; yet the one element of right to fire, with its attendant implied right to control, has carried the day for employment relationship."

Here, the Workers' Compensation Court concluded that the evidence shows that either party to this contract could terminate the contract at any time. The court concluded that because Tom Davis would be liable to claimant "for any tonnage previously hauled" if he fired claimant, Davis could not terminate without liability, which is an indication of an

8

independent contractor relationship. However, if claimant were an employee and had in fact performed work in hauling hay, he would also be entitled to payment for the work performed even though he had been terminated as an employee. Similarly, if claimant were an independent contractor and had been terminated, he still would be entitled to payment for his performance of the contract in the hauling of hay up to the time of termination.

Claimant testified as follows in response to the leading question of his counsel:

"Q. As you understood the agreement with Mr. Davis, did Mr. Davis have the right to let you go at any time?

"A. Yes."

On cross-examination, claimant testified:

"Q. Before you started hauling Mr. Davis' hay, did he tell you that you had to make so many runs with the hay?

"A. No.

"Q. If you made one run with that hay, you could have terminated your relationship, isn't that right?

"A. Yes, I could have.

"Q. But you would have only got paid for the one run, right?

"A. Yes.

"Q. And he didn't say that payment was conditioned on you making five runs or six runs or whatever?

"A. No."

The testimony of Tom Davis does not specify whether or not he believed he could terminate at will.

We conclude that there is substantial evidence to support the finding on the part of the Workers' Compensation Court that either party could terminate the arrangement at will. However, there is no evidence to support a conclusion that such right of termination could be exercised at any time. As an example, there is no indication that Tom Davis

9

could have stopped Solheim while he was driving down the road and replaced him with a different driver. The uncontradicted facts support the conclusion that either claimant or the employer could have terminated the relationship at the end of any run, that being at the end of the delivery of a load of hay to the 7-W Ranch. The evidence does not justify a conclusion that the employer could fire claimant at any time, as was true in Sharp. We therefore conclude that the Davis Ranch did not have an absolute right to terminate the relationship at any time without liability. Such a conclusion supports a finding of independent control or independent contractor relationship, as distinguished from that of employer-employee.

We affirm the conclusion by the Workers' Compensation Court that consideration of all four factors shows that claimant was an independent contractor and that he is therefore excluded from coverage by virtue of section 39-71-118(1)(a), MCA.

II

Claimant argues that, regardless of any determination as to his status as an independent contractor, he is entitled to compensation benefits because of the insurer's failure to deny his claim within 30 days. Section 39-71-606(1), MCA states:

> "Insurer to accept or deny claim within thirty days of receipt - notice of denial - notice to employer.
> (1) Every insurer under any plan for the payment of workers' compensation benefits shall, within 30 days of receipt of a claim for compensation, either accept or deny the claim, and if denied shall inform the claimant and the division in writing of such denial."

Claimant argues that insurers should not be more liberally treated than an injured worker.

Injured workers are held to strict notice requirements under section 39-71-603, MCA and may not qualify if their claims are filed late. Claimant argues that by overlooking

10

the mandatory language of section 39-71-606(1), MCA and holding that there must be an employment relationship before claimant can become eligible for benefits, the Workers' Compensation Court rendered that section "a nullity" and established a harsh and unjust double standard more favorable to the insurers than to the workers. Claimant also refers this Court to Montana Workers' Compensation Manual, which states:

> "This section [39-71-606] is mandatory and presumably an insurer that does not comply with its requirements is considered to have accepted any claim for benefits submitted." Norman H. Grosfield, Montana Workers' Compensation Manual, §5.30, p. 28.

Claimant also refers to an unappealed decision of the Workers' Compensation Court in which that court concluded that a claim must be accepted as compensable until further order of this Court, because a defendant had failed to accept or deny the claim within 30 days, as required under section 39-71-606, MCA.

Claimant contends that section 39-71-606, MCA is comparable to the 60-day notice statute. Section 39-71-603, MCA states in pertinent part:

> "Notice of injuries other than death to be submitted within sixty days. No claim to recover benefits under the Workers' Compensation Act, for injuries not resulting in death, may be considered compensable unless, within 60 days after the occurrence of the accident which is claimed to have caused the injury, notice of the time and place where the accident occurred and the nature of the injury is given to the employer or the employer's insurer by the injured employee or someone on the employee's behalf . . .." (emphasis added)

In that section there is the clear conclusion by the Legislature that no claim may be considered compensable unless notice is given within 60 days. It is important to note no such conclusion is contained in the 30-day notice provision of section 39-71-606, MCA.

In a similar manner, the general statute of limitations, section 39-71-601(1), MCA states in pertinent part:

11

"Statute of limitation on presentment of claim - waiver. (1) In case of personal injury or death, all claims shall be forever barred unless presented in writing to the employer, the insurer, or the division, as the case may be, within 12 months from the date of the happening of the accident, either by the claimant or someone legally authorized to act for him in his behalf."

Again we find the clear expression of intention of the Legislature that the claim shall be forever barred unless presented within the time period.

In construing the 30-day provision of section 39-71-606(1), MCA, we must determine the plain meaning of the words used, interpreting the language in accordance with usual, ordinary and accepted meaning, and the intention of the Legislature should be gathered from the language therein. Cosgrove v. Industrial Indemnity Company (1976), 170 Mont. 249, 254, 552 P.2d 622, 624. Where the Legislature has not inserted a penalty provision, we should be extremely cautious before inserting any such penalty. That caution seems particularly significant here where the contention is made that coverage should be granted because of the failure to deny the claim, notwithstanding a finding that the claimant in fact was not an employee.

In view of the disagreement between the members of this Court as to the application of section 39-71-606, MCA, it is well to consider the statements and conclusions of the Workers' Compensation Court:

"Claimant contends that he should prevail in this case, irregardless of this Court's finding on whether claimant was an employee or an independent contractor, on the basis that insurer failed to accept or deny claimant's claim within 30 days after receipt of the claim. While this claim is ingenious, it ignores the basic fact that the insurer must be found liable under section 39-71-407 MCA before any benefits under Chapters 6 or 7 of the Act may be awarded. Section 39-71-407 MCA provides:

"'39-71-407. Liability of Insurers. Every insurer is liable for a payment of compensation, in the manner and to the extent hereinafter provided, to the employee of an employer it insures who receives

12

an injury arising out of and in the course of his employment . . .'

"As the emphasized portion of the above statute makes clear, there must be an employment relationship first, and liability must be established before a claimant becomes eligible for any benefits . . . Here, the Court has found that no employment relationship existed between claimant and Tom Davis . . . and therefore the insurer is not liable to the claimant for benefits under section 39-71-606 MCA. Simply stated, the employment relationship is the cornerstone upon which all benefits under the Act are founded. If there is no employment relationship, the insurer is not liable for any benefits." (emphasis added)

We agree that the employment relationship is a cornerstone upon which workers' compensation benefits are founded. Nonetheless, we must consider the mandatory requirement for acceptance or denial of a claim within 30 days. This is a specific legislative requirement. In the absence of a legislatively designed penalty, we must consider whether or not claim approval must be granted in order to afford reasonable protection to a claimant.

We therefore consider the penalty provision of section 39-71-2907, MCA which in pertinent part provides for an increase of award because of a delay in payment:

"When payment of compensation has been unreasonably delayed or refused by an insurer, either prior or subsequent to the issuance of an order by the workers' compensation judge granting a claimant compensation benefits, the full amount of the compensation benefits to a claimant . . . may be increased by the workers' compensation judge by 20%." (emphasis added)

It is clear that the foregoing section allows a 20% penalty for an unreasonable delay in payment. That speaks directly to the delay problem involved in the failure to deny a claim within 30 days. We conclude that this 20% penalty provision can be applied where there has been a delay in making a decision within the 30 days provided by section 39-71-606, MCA.

We hold that the claimant has failed to show a need for such a drastic penalty as the granting of claim approval for

13

failure to accept or deny the claim within 30 days, and conclude that the 20% penalty provision affords reasonable protection for claimants in the same position as the claimant in this case. We hold that section 39-71-606, MCA does not automatically entitle a claimant to benefits because of the failure of an insurer to accept or deny a claim within 30 days.

The judgment of the Workers' Compensation Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

14

Mr. Justice Frank B. Morrison, Jr. dissents as follows.

The majority correctly quotes section 39-71-606(1), MCA. This statute makes it mandatory that every insurer shall, within 30 days of receipt of a claim for compensation, either accept or deny the claim. The only logical consequence of failure to deny is acceptance. The Montana Workers' Compensation Manual, Norman H. Grosfield, section 530, p. 28, agrees. In fact, I would surmise that this has been the understanding among practitioners, and although I acknowledge this goes outside the record, that is the luxury of dissent.

The majority has effectively repealed section 39-71-606(1), MCA. This seems to me to be nothing less than result-oriented judicial activism from those of my brothers generally considered to be opposed to such conduct.

I would like to see more consistency in judicial philosophy and less reliance on achieving the desired result.

_____
Justice

Mr. Justice John C. Sheehy:

I concur in the dissent of Mr. Justice Morrison.

_____
Justice

15

Mr. Justice Daniel J. Shea dissenting:

I would reverse the Worker's Compensation Court because the State Fund failed in its mandatory statutory duty to accept or deny the claim within 30 days of its receipt. The failure to do so results in the acceptance of the claim. The staute is clear. Section 39-71-606(1), MCA provides:

> "(1) Every insurer under any plan for the payment of workers' compensation benefits shall within 30 days of receipt of a claim for compensation, either accept or deny the claim, <u>and if denied shall inform the claimant and the division in writing of such denial.</u>" (Emphasis added).

The majority gives no meaning to this statute other than to read it together with the possible penalities that apply under section 39-71-2907, MCA, if an insurer has "unreasonably delayed or refused. . ." to pay benefits to a claimant. I assume by the majority opinion that if the insurer does not accept or reject a claim within 30 days, and if it is later found to be compensable, that the majority would hold the 20 percent penalty under section 39-71-2907 to be automatic. Or, under the majority rationale, must the claimant establish also that the insurer was "unreasonable" in not notifying him within 30 days of its position on the claim.

While it is possible to construe section 39-71-2907 to apply to a situation under 39-71-606(1) where the mandatory statutory duty of notice has not been given, this statute cannot serve the purpose that the majority lets it serve here. The statutory 20 percent penalty statute has nothing to do with notice. In fact, a fair reading of the statute is that it assumes a notice has been given to the claimant and the only question is whether the insurer's position was

unreasonable in "delaying" or in "refusing" to pay the benefits owed.

I believe, on the other hand, that the notice statute, section 39-71-606(1), stands alone in determining the time limits within which an insurer must act to accept or deny a claim once it has been presented to the insurer. The statute can only mean that coverage is deemed to exist as a matter of law if the insurer has neither accepted nor denied the claim within the mandatory 30 days.

The last clause of section 39-71-606(1) is important. It reads: ". . .and if denied shall inform the claimant and the division of such denial." (Emphasis added). Its purpose is clear. If a claim is accepted, no prejudice can befall a claimant by not immediately notifying him and the division, except perhaps the prejudice of not immediately receiving benefits - a prejudice that can in almost all cases be cured. But the prejudice is clear if the insurer denies the claim but fails to notify the claimant of the denial. The statute is designed to protect against that kind of prejudice by imposing a duty on the insurer to notify the claimant within 30 days that his claim has been rejected. Failure to give this statutory written notice results in acceptance of the claim as a matter of law.

Daniel J. Shea
Justice

- 17 -