No. 90-345

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

JESS K. WALLING,

     Claimant and Appellant,

  -vs-

HARDY CONSTRUCTION,

     Employer,

  and

CIGNA INSURANCE COMPANY,

     Defendant and Respondent.

**FILED**

MAR 19 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  Workers' Compensation Court
             The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Tom L. Lewis; Regnier, Lewis & Boland, P.C., Great
          Falls, Montana

     For Respondent:

          Randall H. Gray; James, Gray & McCafferty, Great
          Falls, Montana
          Chip McKenna, CIGNA Insurance Company, Portland,
          Oregon

Submitted on Briefs:  February 21, 1991

Decided:  March 19, 1991

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

On June 6, 1990, the Montana Workers' Compensation Court determined that claimant Jess K. Walling, as an independent contractor, could not recover workers' compensation benefits from Hardy Construction, the general contractor. From this decision, Walling appeals. We affirm.

The following issues are presented:

1. Was the evidence sufficient for the Workers' Compensation Court to find that Walling was an independent contractor, rather than an employee of Hardy Construction?

2. In concluding that Walling was an independent contractor, did the Workers' Compensation Court err in its analysis of the control factor of § 39-71-120, MCA?

3. Did the Workers' Compensation Court err by applying § 39-71-401, MCA, as a basis for denying Hardy Construction's liability under the Workers' Compensation Act?

## Summary of Facts

In September 1984 Hardy Construction, a general contractor, was awarded a $6.5 million contract for construction of a new Fergus County high school. Hardy Construction negotiated a subcontract, signed on January 10, 1985, with Jess Walling, proprietor of Walling Construction, a business in operation from 1976 to 1985. In submitting his bid for the concrete flatwork, Walling advised Hardy Construction that Walling did not want to set the forms, but only wanted to do the pouring and finishing.

2

Walling agreed to pour and finish concrete slabs on the school construction project for 28 cents per square foot.

Paragraph VII of the subcontract provided that Walling was to "obtain, maintain and pay for such workmen's compensation insurance as may be required by the General Contract or by law . . . ." Walling complied with this requirement of the subcontract by providing workers' compensation insurance through the State Fund for his employees. As allowed by law, Walling elected not to pay for workers' compensation insurance for himself.

The agreement specified that the subcontractor was to "proceed with the work in the sequence directed by the Contractor and to abide by the Contractor's decision as to the allotment of all storage and working space on the Project."

The subcontract required Walling to provide "[l]abor and equipment to place and finish concrete." Equipment provided by Walling included shovels, rakes, wheelbarrows, cement finishing machines worth $200 to $350, and hand tools. Under the terms of the subcontract, Hardy Construction provided concrete, cure, sealer, hardener, concrete saw worth $1,000, installation of forms, reinforcing steel, and visqueen.

On one occasion Hardy Construction allowed Walling to use a forklift, operated by a Hardy Construction employee, for lifting concrete to mezzanine level. On three occasions, in order to speed up the work, Hardy Construction made available to Walling a Bobcat tractor driven by a Hardy Construction employee.

Under the terms of the subcontract, Hardy Construction had the

3

authority, which it never exercised, to fire any Walling employee Hardy Construction considered objectionable. If the subcontract were terminated, the subcontractor retained the right to withhold service and to extend the time for completion of the work if delay were the fault of Hardy Construction.

On the job Hardy Construction's superintendent, Norm Bjorndal, pursuant to the subcontract, controlled the sequence of work by subcontractors. Walling checked with Bjorndal daily to find out when and where concrete was to be poured. Bjorndal told Walling and his employees where they had to work and how much concrete to pour each day. At times, Bjorndal ordered Walling to pour concrete over Walling's objections that rain would ruin the concrete. By altering the method of setting the screed, Bjorndal changed Walling's procedure for making the concrete surface flat. Bjorndal also determined whether to "burn the floor," giving the concrete a high gloss finish, or whether to leave the concrete with a rough finish. Walling worked along with his employees.

On the other hand, Walling or one of his foremen, Jim Plovanich or Dan Oblander, supervised the Walling employees. Bjorndal did not instruct Walling on which employees or how many employees to have on the construction site. Bjorndal did not tell Walling which Walling employees were to perform certain tasks or what tools to use. Walling, rather than Bjorndal, controlled when the Walling employees would take lunch and coffee breaks or could leave the job site.

Walling employees did not make out time cards as did Hardy

Construction employees. Rather, Walling paid his own employees. According to the subcontract, Walling was paid within sixty days of submittal of a certified monthly estimate to Hardy Construction, provided that the architect had certified the monthly estimate, that Walling was not in default, and that Hardy Construction had been paid by the project owner. Payment to Walling was usually made monthly. In contrast, Hardy Construction employees were paid weekly whether or not Hardy was paid by the owner of the project.

Each month Hardy Construction obtained lien waivers from Walling and its other subcontractors.

On May 28, 1985, Walling, while working, severely injured his back when he slipped on some wet forms at the construction site. Due to his injuries, Walling underwent surgery on June 27, 1985. About 90 per cent of Walling's work had been completed at that point. After Walling's injury, Bjorndal took over Walling's crew until the work was finished in July, 1985.

Walling claimed that he was eligible for workers' compensation benefits as an employee of Hardy Construction, rather than an independent contractor. On December 6, 1989, a trial was held before the Workers' Compensation Court on the issue of liability, which was bifurcated from the question of the nature and extent of Walling's injury. From the court's decision in favor of Hardy Construction, Walling appeals.

I

Was the evidence sufficient for the Workers' Compensation Court to find that Walling was an independent contractor, rather

5

than an employee of Hardy Construction?

Walling claims that he was an employee of Hardy Construction, not an independent contractor. See § 39-71-118(1)(a), MCA. An "independent contractor" is defined as follows:

[O]ne who renders service in the course of an occupation and:

(1) has been and will continue to be free from control or direction over the performance of the services, both under his contract and in fact; and

(2) is engaged in an independently established trade, occupation, profession, or business.

Section 39-71-120, MCA.

The parties agree that Walling Construction, as an independently established trade or business, satisfies subsection (2) of § 39-71-120, MCA. However, Walling alleges that when working for Hardy Construction, he was not "free of direction or control over the performance of services," as required by subsection (1).

In Sharp v. Hoerner Waldorf Corp. (1978), 178 Mont. 419, 584 P.2d 1298, this Court developed a four-part test for determining whether or not an employer has the right of control: (1) direct evidence of right or exercise of control; (2) method of payment; (3) furnishing of equipment; and (4) right to fire. Sharp, 178 Mont. at 425, 584 P.2d at 1301-02. A finding that an individual is an independent contractor demands "'a convincing accumulation of these and other tests,'" while a finding of employee status "'can if necessary often be solidly proved on the strength of one of the four items.'" Sharp, 178 Mont. at 425, 584 P.2d at 1302

6

(quoting 1C A. Larson, Workmen's Compensation Law § 44.10, at 8-35 (1952)).

Control

The traditional test of employer/employee status is the right of the employer to control details of the work, not necessarily the exercise of that control. Carlson v. Cain (1983), 204 Mont. 311, 324, 664 P.2d 913, 919. An employer of an independent contractor controls the "end result" of the contractor's work, while control of the "means" by which the work is accomplished indicates that the worker is an employee. Johnson v. Department of Labor & Industry (1989), 240 Mont. 288, 292-93, 783 P.2d 1355, 1358. Without destroying independent contractor status, the owner or general contractor "is entitled to as much control of the details of the work as is necessary to ensure that he gets the end result from the contractor that he bargained for." 1C A. Larson, Workmen's Compensation Law § 44.20, at 8-57 (1990).

Walling contends that Hardy Construction exercised control over Walling's work by determining when and where Walling would work. The subcontract provided that Hardy Construction could control the sequence of the work, a condition necessary to ensure the end result on a project employing as many as forty Hardy Construction employees and approximately fifteen subcontractors. This provision in the subcontract was not enough to strip Walling of control.

Walling cites Bjorndal's ordering some concrete work to be performed in bad weather against Walling's advice as one way in

7

which Hardy Construction exercised direction and control over Walling. These actions of Bjorndal fell within Hardy Construction's right to control the sequence of the work on the construction project.

Walling argues that Hardy Construction managed the means by which the work was accomplished when Bjorndal changed Walling's screeding method. Bjorndal made the change because Hardy Construction altered its method of setting forms, a responsibility of Hardy Construction under the subcontract.

Bjorndal's decisions as to what type of finish to put on the concrete also were within Hardy Construction's prerogative to control the end result. When Walling's crews were working, either Walling himself or one of his foreman directed their activities. We hold that Hardy Construction did not exert any more control over Walling than necessary to oversee construction of the project and ensure the end result.

### Method of Payment

Walling was paid 23 cents per square foot of completed concrete. Walling had to submit certified monthly estimates to the contractor and payment had to be certified by the project architect. Final payment to Walling was conditioned upon the architect's certification of final payment to Hardy and provided that Walling would be paid only if Hardy Construction were paid by Fergus County. Hardy Construction paid its employees weekly, whether or not Hardy Construction received payments from the County. Walling paid his own employees. According to 1C A.

8

Larson, Workmen's Compensation Law, § 44.33, at 8-94 (1990):

> [p]ayment on a time basis is a strong indication of the status of employment. Payment on a completed project basis is indication of independent contractor status. Payment on a piece-work or commission basis is consistent with either status.

"When payment is by quantity or percentage, the method of payment test . . . largely cancels itself out and becomes neutral." 1C A. Larson, Workmen's Compensation Law § 44.33(b), at 8-106 (1990). We hold that the method of payment to Walling was at best a neutral factor, and more indicative of independent contractor status when compared with the manner in which other Hardy Construction employees were paid and the conditions which had to be met for Walling to be paid.

Furnishing of Equipment

Providing valuable equipment indicates employment status as explained in 1C A. Larson, Workmen's Compensation Law § 44.34(b), at 8-138 to 139 (1990):

> When it is the employer who furnishes the equipment, the inference of right of control is a matter of common sense and business. The owner of a $10,000 truck who entrusts it to a driver is naturally going to dictate details such as speed, maintenance, and the like, in order to protect his investment. Moreover, since he has capital tied up in this piece of equipment, he will also want to ensure that it is kept as productive and busy as possible.

Walling or his employees provided the equipment, including expensive cement finishing machines, ordinarily used during the course of work. On the few occasions when a Bobcat and forklift were used, the machines were operated by Hardy Construction workers. Provision and use of equipment were consistent with independent contractor status.

9

## Right to Fire

Termination at will or for failure to perform certain details unrelated to the end result strongly indicates employee status. Carlson, 204 Mont. at 324, 664 P.2d at 919. Although, pursuant to the subcontract, Hardy Construction reserved the right to fire unsatisfactory employees of Walling, Hardy Construction could not "fire" Walling without terminating the contract and incurring liabilities. Walling could withhold service and extend the time for completing its work due to the fault of Hardy Construction. The conditions set forth in the contract for termination are consistent with independent contractor status.

Unless the facts are undisputed, the question of independent contractor versus employee status is not a matter of law. Carlson, 204 Mont. at 317, 664 P.2d at 916. Since certain facts were disputed, in this case the "sufficiency of the evidence" standard is appropriate. Solheim v. Tom Davis Ranch (1983), 208 Mont. 265, 272, 677 P.2d 1034, 1038.

When determining whether evidence supports the findings and conclusions of the Workers' Compensation Court, the scope of review is limited. The Supreme Court cannot substitute its judgment as to the weight of the evidence and cannot overturn the judgment of the Workers' Compensation Court if substantial evidence supports the findings. Schrapps v. Safeway Stores, Inc. (1989), 238 Mont. 355, 356-57, 777 P.2d 887, 888.

We hold that substantial evidence supports the finding of the Workers' Compensation Court that Walling was not an employee of

10

Hardy Construction, but an independent contractor.

## II

In concluding that Walling was an independent contractor, did the Workers' Compensation Court err, as a matter of law, in its analysis of the control factor of § 39-71-120, MCA?

In considering questions of law, this Court is not bound by the conclusions of the Workers' Compensation Court, but is free to draw its own conclusions from the evidence presented. Carlson, 204 Mont. at 317, 664 P.2d at 916. Walling alleges that the Workers' Compensation Court erred as a matter of law by examining the control granted to Hardy Construction according to the "four corners of the contract itself," as stated in the court's conclusions of law:

> All of the functions of control exercised by Hardy fit within the four corners of the contract itself. Hardy reserved to itself the ability or right to determine when and where to pour concrete as the sequence of work was solely at Hardy's discretion. The fact that Bjorndal ordered certain work performed against Walling's advice due to weather does not alter that contract provision. The same is true of the furnishing of equipment which paragraph XIX permits by agreement. No additional duties outside the terms of the contract were imposed on Walling as was the case in Sharp . . . .

According to the statutory definition, an independent contractor's direction and control must be determined "both under his contract and in fact." Section 39-71-120, MCA. As stated in Sharp, "in determining this right of control, attention must be directed to the employment contract and the fact of the employment situation." Sharp, 178 Mont. at 425, 584 P.2d at 1301.

We find no error because we read the court's conclusion as

11

examining both the subcontract and what in fact occurred on the job site. Hardy Construction's control over the sequence of work performed and provision of equipment, gave Hardy Construction no more direction and control over Walling than necessary to ensure the end result.

## III

Did the Workers' Compensation Court err by applying subsection (3) of § 39-71-401, MCA, as a basis for denying Hardy Construction's liability under the Workers' Compensation Act?

Since we have upheld the Workers' Compensation Court's determination that Walling was an independent contractor, we need not discuss the court's application of § 39-71-401(3), MCA.

Walling further contends that he should be afforded insurance coverage by Hardy Construction under the statutory provision governing liability of an employer who contracts out work:

> (2) Where an employer contracts to have any work to be done by a contractor <u>other than an independent contractor</u>, and the work so contracted to be done is a part or process in the trade or business of the employer, then the employer is liable to pay all benefits under this chapter to the same extent as if the work were done without the intervention of the contractor, and the work so contracted to be done shall not be construed to be casual employment. Where an employer contracts work to be done as specified in this subsection, the contractor and the contractor's employees shall come under that plan of compensation adopted by the employer.

Section 39-71-405(2), MCA (emphasis added).

We have previously interpreted this statutory subsection, identical to the 1983 version, in State Insurance Compensation Fund v. Castle Mountain Corporation (1987), 227 Mont. 236, 739 P.2d 461. While this Court recognized that subsection (2) could be read to

12

require a general contractor to provide benefits for a subcontractor if the subcontractor were a non-independent contractor, we concluded that "the subsection was not intended to address situations where the contractor is sufficiently independent to carry its own workers' compensation insurance." Castle Mountain, 227 Mont. at 241, 739 P.2d at 464.

Since we have held that the evidence was sufficient to find that Walling was an independent contractor, § 39-71-405(2), MCA, does not apply.

The judgment of the Workers' Compensation Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

13